## No. 6890.

### THE STATE vs. ALFRED SIMIEN.

The facts set forth in the affidavit of a party accused of a crime, in support of his motion for a continuance, are, for the purposes of the motion, to be taken as true. They can not be traversed, or contradicted by counter affidavits, or other evidence.

When the confessions of a prisoner to the committing magistrate have been reduced to writing, but on being offered in evidence on the trial of the accused, are, on his motion, rejected on account of defects of form in the writing, his voluntary declarations to the magistrate may be proved by parol.

To warrant a conviction on circumstantial evidence, it is necessary that the circumstances should be of such a nature, and so related, as to leave no reasonable doubt that the accused is guilty of the offense with which he is charged. It is not necessary that the circumstances should produce that positive conviction which would flow from the testimony of a reliable witness.

APPEAL from the Eighth Judicial District Court, St. Landry parish. *Hudspeth*, J. Trial by jury.

*H. N. Ogden*, Attorney General, for the State.

*Lewis & Bro.* for the defendant.

The opinion of the court was delivered by

MANNING, C. J. The defendant was indicted for stealing a cow. He applied for a continuance, and made affidavit that "Madame J. B. Simien, a competent and material witness in his behalf, is absent without his consent or procurement, and that he will not be able to procure her

State vs. Simien.

attendance at the present term of the court; but he expects to procure her attendance at the next ensuing term. He represents that a short time previous to the institution of this prosecution he had purchased from Madam Simien a two-year-old heifer. He further represents that he can not sufficiently establish the same fact by the witnesses in attendance upon the trial, or by other witnesses known to petitioner." He then states that this witness is old and sick, that the application is not made for delay, but to obtain substantial justice, and further that he has used due diligence to procure the attendance of the witness, and that she has been in attendance upon the session of the court until attacked by illness.

The State prayed leave of the court to traverse this affidavit, alleging that the witness, who is the mother of the accused, was not sick, and the application for a continuance was a mere subterfuge to avoid a trial, and that the witness was absent by connivance with the accused. The defendant objected to hearing this on the ground that the statements made in the affidavit must be taken as true for the purpose of trying the motion, and the court overruled his objection for the reason that an affidavit for a continuance can be traversed when the judge suspects that the object is delay merely, and that the facts sworn to are not true. The first bill reserved is as-to this point.

The rule is, that the affidavit of the accused, upon which is grounded his motion for a continuance, is for the purposes of the motion to be taken as true, and no counter affidavit can be received, nor can the statements or facts it contains be contradicted by a cross-examination or *aliunde* proof, and this rule is of such universal acceptance that we are not inclined to modify it. Archbold's Crim. Prac. 1 vol. 569 *et seq.* The case of Allen v. the State, 10 Georgia, 85, cited by the judge *a quo* in support of his ruling, does not go so far, and if it does, it is opposed to the whole current of authority.

The State offered in evidence what purported to be a voluntary declaration of the accused before the justice of the peace who held the preliminary examination, which on objection by the accused that such declaration was defective in form, was ruled out by the court. The State then offered the justice of the peace as a witness to prove by parol that a declaration had been made before him by the accused, and what that declaration was. The objection of the defendant to the admission of this testimony was overruled, and he reserved a bill to the ruling.

The declaration had been taken down in writing by the committing magistrate, but had not been properly attested or authenticated. Our law requires that such declaration shall be reduced to writing and signed by the prisoner in the presence of the magistrate and of two witnesses, or if the prisoner can not sign, that that circumstance shall be men-

tioned, and the declaration shall be certified with the signature of the magistrate and the same number of witnesses.    Rev. Stats. 1870 sec. 1010.

The point is not decided in State v. Rodriguez, 2 Martin, 254, to which the counsel for the defendant refers us, but the court say, it may well be doubted whether, while the law so carefully provides for the safety of the accused against the great facility with which words may be misrepresented, and his declaration colored, it is not much more consonant with justice that the testimony of the committing magistrate should be refused when he had neglected to reduce to writing the declaration of the prisoner.

In the present case, he had not neglected to reduce the examination to writing, but the writing was not properly attested or authenticated. The principle approved in Rodriguez's case is there stated to have been decided in State v. Grove in North Carolina as preserved in Martin's Notes.   More recently the court of that State has held that though the examining magistrate, before whom a prisoner charged with felony is brought, does not reduce the examination to writing, as it is his duty to do, yet evidence may be given of such prisoner's confessions at the time, but to render such evidence admissible, it must appear that the committing magistrate did not take down the examination in writing, or that the same is lost.    State v. Parish, Busbee Rep. 239.    So also in Mississippi, where a justice of the peace took the confessions of an accused in writing at the time they were made, it is erroneous to allow the justice to testify of these confessions from recollection when the non-production of the writing is not accounted for.    Peter v. the State, 4 Smedes & Marsh. 31.

Neither of these cases is like the present, for the magistrate did take the declaration in writing, and it is not lost, but was produced and rejected on objection by the accused.   Our statute providing for the declarations of an accused person to be taken down in writing is similar to those of other States, and they are all either copied from or assimilated to the statute of Philip and Mary, which first broke down the rule of the common law in England, until then inexorable, that no examination of the prisoner himself was permissible.   But before the passage of that statute, the confessions of a prisoner, when made under circumstances defined by the law, were admissible.   We hold that when declarations of a prisoner to the committing magistrate have been reduced to writing by the magistrate, and the written examination is offered by the State, and upon objection by the prisoner of its informality, it is held inadmissible by reason of irregularity, parol evidence is admissible to prove what he voluntarily disclosed.   1 Greenleaf's Ev. § 227.

The third bill reserved was to the refusal of the court to charge that

State vs. Simien.

before the jury can find a verdict of guilty, the meat found in his possession must be identified as the meat of the cow described in the indictment, and the State must prove that it was stolen by the accused—that he can not be called on or required to account for the meat found in his possession until the State proves that the meat so found was a part of the cow described in the bill of indictment, and that it had been stolen—that if the meat found in his possession was stolen property, the accused is not bound to account satisfactorily for his possession of it, but is only required to raise a reasonable doubt whether he had come by it honestly.

The judge properly refused to charge in this sweeping language, which was calculated to mislead the jury. He did charge that the jury may convict upon circumstantial as well as direct evidence, but if the former, great caution should be used, and that if, assuming all to be proved that the evidence tends to prove, any other hypothesis than the guilt of the accused is consistent with that proof, then it is insufficient to convict—that the State must prove all the facts necessary to establish the guilt of the prisoner, and it was for the jury to say, taking all the circumstances proved together, whether the accused had or had not raised a reasonable doubt of his guilt—that the true test is, not whether the circumstances proved produce as full conviction as the positive testimony of a single credible witness, but whether they produce moral conviction to the exclusion of every reasonable doubt. He read the passages in Archbold to the jury where this test, and the manner of its application, is explained and elucidated. Crim. Prac. 1 vol. p. 434 marg. p. 134 Waterman's note.

No more correct exposition of the law could have been given, and it was especially appropriate to elaborate it by putting the proposition in different forms as enunciated in different cases, because of the ease with which jurors are misled upon the matter of a conviction upon circumstantial evidence alone.

The first point having been ruled adversely to the accused, and improperly thus ruled, it becomes necessary to reverse the judgment, and remand the cause. Therefore

It is ordered and decreed that the verdict of the jury is set aside and the judgment rendered thereon is reversed and annulled, and the cause is remanded to the lower court for a new trial.

### DISSENTING OPINION.

DeBLANC, J. There are circumstances under which the sworn application of a prisoner for a continuance may and should be traversed, on motion of the State Attorney and with the leave of the court. Otherwise, and particularly in the country parishes, where the jury sessions

are held at long intervals, the administration of justice in criminal mat-- ters, shall be—if not entirely defeated—at least indefinitely checked and suspended by an unbroken succession of unassailable affidavits.

If though manifestly false, the sworn statement of a murderer, a thief or a perjurer must be taken as true, at what term of any court could they or either of them be tried, unless by their consent? Would they not, at every term, unhesitatingly swear to any fact necessary to postpone and avoid a dreaded trial—to the materiality of the evidence of a parent, a brother, a friend, an accomplice—the cause of whose absence, on the day fixed for the trial, ceases to be a secret to any one, as soon as the affidavit is read.

Which of the prisoner's rights could be either curtailed or im- paired by allowing the prosecutor to traverse his suspected declaration? Would it deprive him of compulsory process for obtaining witnesses in his favor, or of the privilege of meeting those witnesses face to face? If, to entitle him to the craved continuance, there is a just, a reasonable, a real cause, the traverse would establish the existence of that cause: if not, the course of justice would not be impeded by a mere technicality, destructive of the interest of the State and of society, useless to those who swear to what is true, useful to those alone who add a perjury to the crime, for the alleged commission of which they are prosecuted.

To test the propriety and justice of a rule which has so long been adhered to, let us suppose an extreme case—for instance, that a prisoner has sworn that Frank is one of his material witnesses—that he was cited, but could not be found—that he is absent from the parish, &c.— and that, on hearing the affidavit read, the clerk and the sheriff were to rise in front of the bench, and inform the court, the first—that no witness of that name was cited—the other, that the unnotified and desired wit- ness is in court, leaning on the prisoner's box; would the judge answer I am bound, by an inflexible rule, to believe the affidavit, and to dis- believe the clerk, the sheriff, the record and my own eyes? Assuredly not.

In regard to applications for a continuance, far from being restricted, the discretion of the judge should be as enlarged as it can properly be, without affecting the constitutional privileges of the prisoner, or reducing those liberal guarantees which should surround his trial. Unless the too rigid rule which prevails in the other States of the Union be slightly bent, in so far only as it impedes the legitimate action of our courts, and so modified as not to embarrass the execution of our laws, the inevitable affidavit shall ever be held up as a shield between the criminal and the sentence, the crime and the penalty, and—beyond the limits of this city—our courts shall be almost powerless to even try, much less to check or punish any violation of our laws.

For this reason, I respectfully dissent from the opinion of my asso- ciates.