Statement of the Case.
MONROE, J.
The defendant was convicted of murder and sentenced to death, and he presents his case to this court by means of two bills of exception, from which it appears: That on October 20, 1912, he was indicted, arraigned, and pleaded (not guilty). On the same day his ease was assigned for trial on October 30th, after which on October 23, Messrs. W, C. Carruth and Hewes & .Smith were appointed to defend him. On the following day (October 24th) the order appointing Messrs. Hewes & Smith was rescinded. On October 30th, when the case was called for trial, defendant, through counsel (Mr. Carruth), filed a sworn application for a continuance, alleging that George Franklin and Mathew Brooks, witnesses summoned in his behalf, were absent, and, further, as follows:
“Appearer shows that he expects to prove by each of said witnesses that they, and each of them, were present when the alleged murder took place; that before appearer fired the fatal shot the deceased, Le Roy Mercier, made an attempt to draw a pistol on appearer, and that appearer shot in self-defense, just as soon as Mercier attempted to draw said pistol on appearer. Appearer shows that said testimony is material to the issues in the case, and is admissible in evidence, and that appearer is satisfied that, if this cause should be continued to a later date, appearer would be able to secure the attendance of said witnesses. Appearer shows that he used due diligence and every effort in his power to secure the attendance of said witnesses, and had summonses issued duly and promptly for them; * * * that both of said witnesses are residents of the parish of Pointe Coupee, the said George Franklin, as your appearer has been informed this morning, being temporarily absent in the parish of St. Landry at or near Bazile; * * * that this application is not made for delay, but in order that the ends of justice may be attained ; * * * that appearer does not know the present whereabouts of Mathew Brooks, but is satisfied that he still resides in the parish of Pointe Coupee. Appearer shows that he has been confined in jail for four months, and that the above is the best and the only information that he had been able to obtain relative to the whereabouts of said witnesses, except that the regular domicile and residence of said George Franklin is on McCrea Plantation of Mr. George Mercier; and the regular domicile of Mathew Brooks is on Scott Fenly’s place, on the Atchafalaya river, near McCrea post office; * * * that he cannot prove the facts above stated by any other witnesses known to appearer than said two absent witnesses.”
It further appears that, the motion and affidavit for continuance having been submitted to the court, the district attorney offered to traverse the averments to the effect that defendant had used due diligence, to which coupsel for defendant objected, on the ground that the affidavit contained all that the law required and should be taken as true, which objection was overruled, the trial judge holding that the state had the right to traverse said averments, and that the burden of proof was on defendant to show due diligence by evidence aliunde the same, and requiring him to furnish such evidence on the trial of the motion, which he ordered to be proceeded with; whereupon defendant took his bill No. 1. The bill No. 2 recites that defendant went into the trial of the motion for continuance under protest and with the reservations stated in his bill No. 1, *913 and shows that William G. Carruth testified upon said trial as follows:
“On the 25th day of October, having been appointed by the court to defend the accused, I went to the jail to secure from the accused a list of his witnesses, and among said witnesses he gave me the names of George Franklin and Mathew Brooks. From the memorandum or list of the witnesses which I have before me, and which I prepared when I had said conference with the accused, I find that he stated to me that the residence of these two parties was on the plantation of Mr. George Mercier, but that they had gone, and he did not know whether they had left the parish of Pointe Coupee, or where they had gone. I called at the office of the clerk of court at or about 2 o’clock p. m. on October 25, 1912, and left with the clerk my order, which I wrote in his order book, for the summonsing of the witnesses for the defense, including said two witnesses, but, not knowing where they were and not knowing that they had left the parish, I gave no special directions as to where they could be found. The record shows that the clerk issued summonses for the defense witnesses, including witnesses above stated, on the afternoon of October 25, 1912.”
The defendant, sworn in his own behalf, gave the following testimony:
“I know how to read and write. I have been confined in the parish jail for the past four months. I write to and receive letters from my mother, and sometimes I see Alex White, who is my stepgrandfather. When I gave the list of witnesses to Mr. Carruth, I knew that George Franklin and Mathew Brooks had left Mr. Merger's place, but I did not know that they had left the parish of Pointe Coupee, and I did not know where they were until this morning. I have not seen Alex White since Sunday, October 13th; and I have not seen my mother since that time. When Alex White came to see me on October 13th I did not ask him where these witnesses were, and I have not since inquired where they were. I did not know they had left the parish of Pointe Coupee until I was told so in court this morning.”
The bill then proceeds:
“The evidence was then closed, and the court overruled the motion for continuance, on the ground that due diligence had not been shown.”
And the bill was taken and tendered to the district attorney, who added thereto the following:
“By the District Attorney: After counsel for the defendant and the district attorney had finished questioning the accused, he was asked by the court if he had made any effort to ascertain the whereabouts of the two absent witnesses since his case had been fixed for trial, and he replied that he had not. In answer to a question by the district attorney, the accused said he had been permitted to write as many letters as he eared to while in jail, and had received during his incarceration letters from his relatives living in the vicinity of McOrea, the scene of the homicide, and also had received letters from his mother, who lives in Texas.”
The district attorney refused to admit that the witnesses, if present, would testify as stated in the bill, and the trial proceeded, with neither the testimony nor the admission. What action the sheriff had taken in the matter of serving the subpoenas does not appear.
Opinion.
[2] This court takes judicial notice of the fact that, when the defendant was called for trial and for some time prior to that date, a considerable portion of the parish of Pointe Coupee was under water from the crevasses in the levees of the Mississippi river, that hundreds of the inhabitants were driven from their homes, and that negro laborers on plantations, to which class the defendant appears to have belonged, were in many instances so scattered as to be hard to find. The defendant whilst in jail was not well situated to prosecute any inquiry in regard to his witnesses, and, not having been provided with counsel until within a few days of his trial, may not, and most likely did not, appreciate the importance of beginning his preparations at once. Moreover, though he testifies that he could read and write, his testimony does not, in his ease, carry the assurance that he could read and write sufficiently well to have enabled him to carry on an intelligible correspondence, or that he knew any one to write to who could have rendered him any service. His mother is shown to have resided in Texas, and it is a far cry to a stepgrandfather.
[1] There is authority for the proposition that “the facts set forth in the affidavit of a party accused of crime, in support of his motion for a continuance, are, for the pur *915 pose of the motion, to be taken as true, they cannot be traversed or contradicted by counter affidavits or other evidence” (State v. Simien, 30 La. Ann. 296); that, “where an affidavit for a continuance in a criminal case meets all the requirements of the law, and is made at the same term the indictment was filed, the trial judge cannot refuse the continuance for the reason that he does not believe the accused is swearing to the truth;” and that “it is settled that, where it is doubtful that an accused, charged with a capital offense, was afforded sufficient assistance to procure his witnesses, he is entitled to the benefit of the doubt.” State v. Simien, supra; State v. Bolds & Trevenia, 37 La. Ann. 312; State v. Boitreaux, 31 La. Ann. 188; State v. Moultrie, 33 La. Ann. 1146; State v. Rugero, 117 La. 1040, 42 South. 495; State v. Adam, 40 La. Ann. 747, 5 South. 30.
We find it unnecessary, for the purposes of this case, to go farther than to hold that, the accused having fulfilled all the requirements of the law in the matter of the preparation and presentation of a motion and affidavit for continuance, it was reversible error to hold that the burden of proof rested on him to show due diligence by evidence aliunde such affidavit, and to require him to proceed with the hearing of the motion and furnish such evidence. The conviction and sentence are therefore set aside, and the case is remanded to be proceeded with according to law.