PROVO STY, J.
The defendant was tried for murder, convicted of manslaughter, and sentenced to the penitentiary for life, and has appealed.
Defendant applied for a reassignment of his case on the ground of the absence of a material witness; and, as is required in such cases, made an affidavit stating what he expected to prove by the witness, and that the “attendance of the witness can be secured in due time for trial at this term of court.” For avoiding a continuance, the state made the usual admission that the witness, if present, would testify as stated in the affidavit. On the. trial the affidavit was read to the jury as part of the evidence of the defense. Defendant also appeared as a witness in his own behalf. Before applying for the continuance, defendant had obtained an attachment and the absent witness, and on this attachment the sheriff made the following return:
“After making diligent search and inquiry for within named party, have been informed that he is out of the state, in Texas.”
In rebuttal, the prosecution offered in evidence this attachment and the return on it, and the evidence was admitted over the objection of defendant.
The evidence should not have been admitted. Its only purpose could have been to contradict the affidavit for continuance, and it is well settled that an affidavit for continuance stands for true, and cannot be contradicted. State v. Bolds, 37 La. Ann. 312. Moreover, the return of the sheriff on any process is an official document, and, as such, is evidence, only for the purpose of showing how the process was executed. For any other purpose, or on any other question, it is no better evidence than a mere private letter of the sheriff’s might be. And there was no question before the jury of how the attachment had been executed. The attachment and the mode of its execution was a matter entirely outside of the trial before the jury.
The prosecution now virtually concedes that the evidence was inadmissible, but says *1043 that it was so utterly irrelevant and so inoffensive that it cannot have prejudiced the ease of the defendant, and therefore is no ground for reversal. The obvious retort is:
“Then, why did you offer it? Surely not to benefit the defendant! And if so insignificant one way or the other, why should the representive of the state on the trial, and the judge sitting on the bench, experienced lawyers both, have jeopardized the result of a trial by insisting upon evidence so utterly insignificant that it can do the prosecution no good and the defendant no harm?”
We take a different view. As' above stated, the only possible purpose must have been to discredit the affidavit which defendant had made for a continuance, and the effect of so doing, whether actually so intended or not, was to throw discredit upon the defendant as a witness in his own behalf, and ineidently upon the evidence of the absent witness also, which came through the channel of the defendant, and was in reality vouched for by him alone.
2.On the night of the homicide, while defendant and his brother were in the calaboose at De Ridder, 50 miles from Lake Charles, a crowd assembled in front of the calaboose, and there was some talk of lynching the prisoners. The deputy sheriffs spirited them away, passing through the woods with them on foot, and then driving to the railway station and taking the train to Lake Charles. On the way the prisoners made confessions to the deputy sheriffs. These the court excluded, as possibly having been induced by fear. But the court admitted a confession made the next morning at the courthouse in Lake Charles to another deputy sheriff. The evidence shows that the latter confession was entirely voluntary; that the original improper influences, if any, bad ceased to operate. State v. Hash, 12 La. Ann. 895. The statement of counsel that the prisoner was still under the influence of the occurrences of the night, and that, moreover, it is not certain that he understood. the question put to him — he being an Italian understanding but very imperfectly the English language — are not borne out by the facts. The confession was properly admitted.
True, the prisoner was manacled at the time, and was not warned not to say anything that might incriminate him; but this does-not render the confession inadmissible if it was otherwise free and voluntary. 12 Cyc. 463-467.
3. One of the deputy sheriffs who had con'veyed the prisoner to- Lake Charles, being on the stand, was asked by the defendant’s counsel, on cross-examination, the following question:
“Q. Mr. Reid, you seem to be placed upon the stand in something of the capacity of an expert to show the knowledge of the accused of the English language. Now, the question was put to him: ‘Which one of you men done the killing?’ Couldn’t the accused have mistaken that verb ‘killing’ for another word, such as ‘hitting’ ‘running,’ ” etc.?
And to that question the witness answered:
“No; because he had already told me on the way down.”
Thereby the witness put before the jury the confession which the court had excluded earlier in the trial. But the court at once instructed the jury to disregard this answer of the witness, and to give it no consideration whatever. This episode furnishes no-ground for setting aside the verdict. We do-not think a trial can be defeated by the act. of a witness in volunteering an objectionable remark. Moreover, the answer was not entirely irresponsive to the question, and may well have been made in good faith, and the party responsible in the premises have-been defendant himself.
4. The circumstances of the homicide are-not brought up, but we find defendant’s version of them stated in the motion for a continuance. And it is that, as defendant and *1045 his brother were goiug down the railroad track, the deceased and five other men, who were lying down on the side of the road, called them “Dago s-of b-”; and that about half an hour later, when defendant and his brother returned, the six men were standing across the path, and the deceased, as defendant peacably tried to pass, knocked him down by a blow on the head, and thereupon defendant’s brother fired the fatal shot. Defendant’s counsel argued to the jury that the shooting, whether done by defendant or by his brother, was in self-defense; but that, as a matter of fact, it was by the brother.
The district attorney criticised this argument as being inconsistent; and now defendant asks that the verdict be set aside because of this criticism. Otherwise 'stated, the contention is that the verdict should be set aside because the logic of the district attorney was bad. District attorneys are as liable to trip up in their logic as other people, so that, we imagine, if every flaw in their reasoning was fatal to the verdict, the safest plan would be not to let them talk.
5. The judge charged the law of self-defense, but refused a special charge based on the hypothesis of the shooting having been done by the brother. He says that there was no attempt being made to hold defendant responsible on the hypothesis of the killing having been done by his brother, and that, therefore, the charge was inapplicable to the facts. If so, he was right in refusing the charge.
The other special charges requested to be given were substantially covered by the general charge.
Judgment set aside, and case remanded for trial according to law.
LAND, J.,
dissents on the ground that the admission of the return was not prejudicial to the defendant.