(96 South. 552)

(No. 25739.)

## STATE v. ALLEMAND et al.

(April 10, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law** ⊜⇒1153(4)—**Witnesses** ⊜⇒ 240(2)—**Form of questions in trial court's discretion and verdict not disturbed unless there is clear abuse.**

Considerable latitude must be left to the trial court in ruling on the form of questions to witnesses, and, while counsel should·not put words in the witness' mouth, the verdict will not be disturbed on this ground when subject-matter was relevant, unless there was a clear abuse calculated to prejudice accused's rights.

2. **Evidence** ⊜⇒547 — **Permissible to lead expert as to matters affecting expert knowledge.**

If witness was sworn as expert, it was permissible to lead him as to matters affecting his expert knowledge.

3. **Criminal law** ⊜⇒1169(9)—**Question to expert summarizing testimony already given held harmless.**

Question asked expert merely summarizing the testimony already given by him as to location of bullet wounds, objected to as emphasizing the fact that deceased was shot in the back, *held* not injurious to accused.

4. **Witnesses** ⊜⇒236(4)—**Question should be specific or witness instructed not to repeat hearsay matter.**

Instead of asking witness to tell what he knows about the case or what he saw and heard at a particular time, it is better to direct .his attention in a more definite manner to points about which his testimony is sought, or court should at least instruct him not to repeat hearsay matter not immediately connected with facts and circumstances forming part of the res gestæ.

5. **Criminal law** ⊜⇒1170½(1)—**Verdict not disturbed for indefiniteness of questions when nothing prejudicial went to jury.**

When it is not shown that anything prejudicial went to the jury as result of general questions as to what witness saw·or heard or knew about the case, there is nothing upon which the verdict can be·disturbed.

6. **Witnesses** ⊜⇒269(1)—**Defendant's witnesses cannot ordinarily be cross-examined upon matters not inquired about in chief.**

Witnesses for defense cannot be cross-examined upon matters not inquired about in chief, except within well-defined limitations to test powers of recollection or discrimination or as basis of impeachment.

7. **Criminal law** ⊜⇒1163(3)—**Some showing of prejudicial nature of evidence when objection made, necessary.**

When witnesses are cross-examined as to matters not inquired about in chief, there must be some showing as to prejudicial nature of the evidence when the objection is made to justify setting aside of the verdict.·

8. **Criminal law** ·⊜⇒1128(2) — **Statements in brief not resorted to for facts and circumstances relied on to show prejudice.**

When it is not shown by recitals in the bill of exceptions or otherwise ·how evidence that a dance continued after the homicide could have adversely affected accused, statements in the brief cannot be considered as disclosing the facts and circumstances relied upon.

9. **Witnesses** ⊜⇒337(4) — **Cross-examination of .defendant to show commission of another offense held incompetent.**

On trial for·murder committed at a· public dance conducted by one defendant, cross-examination of him to show he was running a public dance hall without a license should have been excluded, especially where there was no bona fide effort to attack his general character as a witness.

10. **Witnesses** ⊜⇒277(4) — **Cross-examination of defendant about matter gone into by defense in examination of another witness held proper.**

On trial for murder where defendants called sheriff to prove signature to instrument appointing one defendant as special deputy for the other defendant's public balls, and he further testified that he told such appointee and others not to carry concealed weapons, cross-examination of such appointee as to who gave him authority to carry a concealed weapon was proper in rebuttal of intended purpose of defense in going into the matter.

11. **Witnesses** ⊜⇒301—**Question asked defendant as to how he carried gun incompetent as compelling self-incrimination.**

·On trial for murder,·overruling of objection to question asked defendant on cross-examination as to whether he carried a gun in·

his hands or in his pocket was erroneous as compelling him to incriminate himself of another crime.

**12. Witnesses ☞300 — Defendant testifying in his own behalf entitled to immunity from accusing himself of other offenses.**

Accused as witness in his own behalf is subject to rules applicable to other witnesses and enjoys the same immunities including immunity from answering questions accusing himself of another crime.

**13. Witnesses ☞300—Defendant may decline to answer question, no matter how relevant, when it would require incrimination of another offense.**

No matter how relevant evidence may be, if effect of compelling defendant to answer is to charge him with another crime, it is his privilege, under Const. 1921, art. 1, § 11, to decline to answer.

**14. Criminal law ☞814(3)—Charge inapplicable to the facts need not be given.**

The court need not give charge which has no application to facts of the case, or upon legal questions as to which there is no evidence.

**15. Homicide ☞300(12)—Charge as to officer's right to defend himself against one resisting arrest held objectionable.**

Instruction that if defendant attempted to arrest deceased, and he resisted arrest and attempted to draw weapon, then defendant had the right to defend himself, was objectionable because not requiring finding that he was acting as duly authorized officer or believed bona fide that he was so acting.

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Andre Allemand and another were convicted of manslaughter, and they appeal. Verdict and sentence set aside, and cause remanded.

Philip S. Pugh and C. B. De Bellevue, both of Crowley, for appellants.

A. V. Coco, Atty. Gen., and Percy T. Ogden, Dist. Atty., of Crowley (T. S. Walmsley, of New Orleans, of counsel), for the State.

DAWKINS, J. Defendants were charged with murder, convicted of manslaughter, and they prosecute this appeal upon eleven bills of exception to the rulings of the lower court.

Bill No. 1 has been abandoned.

### Bill No. 2.

[1-3] The second bill was to the overruling of an objection to the following question propounded to the parish coroner by counsel for the state, to wit:

"Doctor, then as you have testified to the jury, one wound was in the lower part of the back of the deceased and the other bullet wounds were in the heel of the deceased, penetrating the heel and coming out near the ankle; is that right?"

The objection was that the question was "leading, unfair, unduly emphasizing the fact that the deceased was shot in the back. * * *" The reason for the ruling was "the court considers the witness an expert. * * *"

The question, which was answered in the affirmative, indicates that the witness had already testified to the substance of the facts stated in the question, and the form used was merely a summarizing of his testimony on that point. Considerable latitude must necessarily be left to the trial court in ruling upon the form of questions to witnesses, and while counsel should not be permitted to testify by putting the words in the witness' mouth, yet this court would not feel justified in disturbing the verdict of a jury on that ground, where the subject-matter of the questions was relevant, unless there was a clear abuse calculated to prejudice the rights of the accused. If, as the judge intimates, the witness was sworn as an expert, then it was permissible to lead him as to matters affecting his expert knowledge, and for the reason already stated, that it was merely a summarizing of testimony already given, we can see no injury to the accused. State v. Lyons, 113 La. 959, 37 South. 890.

## Bill No. 3.

[4, 5] The district attorney propounded to state's witnesses questions of the following character:

"Q. Now just state to the jury all you saw and heard immediately preceding the shooting itself and just after the shooting.

"Q. Is there anything else that you know about the case that you have not testified to before the jury?

"Q. Just tell the jury what you saw and heard on that night.

"Q. Please state to the jury what you saw and heard that night of the shooting.

"Q. Please state to the jury what you saw and heard that night in connection with the shooting?"

All of which were objected to by counsel for accused upon the ground that they "were too broad, vague and indefinite, and that the witnesses would have an opportunity to state matters prejudicial to the accused before counsel would have an opportunity to object thereto * * *"; but which objections were consistently overruled.

The better practice is to direct the witness' attention, in a more definite manner, to the points about which his testimony is sought; or the court should at least instruct him not to repeat any hearsay matter which was not immediately connected with the facts and circumstances forming part of the res gestæ. It is not shown that anything prejudicial went to the jury as a result of this method of examination, and there is therefore nothing upon which the verdict can be disturbed under this bill.

## Bill No. 4.

[6-8] This bill was to the overruling of an objection to the following question propounded to a defense witness on cross-examination, to wit:

"Q. Even if the shooting occurred about 10 o'clock, the ball continued just the same after the shooting."

It is recited that the witness had only testified as to what occurred before the shoot-ing; but the lower court gives as the reason for overruling the objection the fact that the witness was on cross-examination. Under the facts stated, the ruling was wrong, for it is well settled in this state (whatever may be the logic of the rule) that witnesses for the defense cannot be cross-examined upon matters not inquired about in chief, except within well-defined limitations to test the powers of recollection or discrimination, or as the basis of impeachment. See cases cited in Marr's Crim. Juris. pp. 739 and 740. However, there must be some showing as to the prejudicial nature of such evidence when the objection is made, to justify the setting aside of the verdict. There is nothing recited in the bill or appears otherwise to show how the mere statement that the dance continued after the killing could have affected adversely the accused. It is true that in the brief counsel say that the purpose was to show that accused "were hardened and brutal men" by showing that they returned to the ball soon after the killing; but we cannot consider this as disclosing the facts and circumstances relied upon. In cases like this, the bill should recite all of the pertinent facts to show the prejudicial effect, where otherwise the question upon its face would appear harmless. Hence we can grant no relief under this bill.

## Bill No. 5.

Bill No. 5 presents the same question and conditions as No. 4, and our ruling thereon must also apply.

## Bill No. 6.

[9] Bill No. 6 was retained to the following questions propounded to the accused, Prejean, on cross-examination, to wit:

"Q. I am now asking you this question for the third time, and I ask for a categorical answer: Did you buy, pay for and obtain from the parish of Acadia a license to run a public ball room in the parish for the year 1922?

"Q. Then on the 20th day of April of this

year, the night Theodore Prejean was shot, you did run a public ball without a license?"

The objection was that the defendants were not being tried for running a public dance hall without a license, and the purpose and effect of such examination was to prejudice the minds of the jurors against accused by showing that they were violators of the law in other respects. The court's reason for overruling the objection was that the said accused was a witness in his own behalf on cross-examination, and the "purpose of the question may be one or several; it may be asked for the purpose of testing his memory, his credibility or otherwise. * * * "

While it has been held that an accused who has taken the stand as a witness in his own behalf may be asked such questions as: "Have you not served a term in the penitentiary?" "How many times have you been before the courts?" "Have you not been prosecuted before and for what offenses?" etc., it has never been held, so far as we know, that the details of such offenses might be gone into, or that the guilt of the accused thereof can be inquired into. It is permissible to attack the general character of the witness in this way, but not as to specific acts. The rule, as stated in Wharton's Criminal Evidence (10th Ed.) vol. 1, p. 987, § 475, is as follows:

"It has been held uniformly that on cross-examination the previous life and character of the witness, especially when he is a party, may be inquired into to such an extent as the court, in the exercise of a sound discretion may deem proper. It is likewise well settled that there is no fixed rule by which the exercise of this discretionary power can be determined, and that while the range is necessarily broad, yet there is a limit beyond which it cannot go, and that limit is clearly reached and passed when questions are asked manifestly for the sole purpose of creating prejudice in the minds of the jurors, or the examination is carried to such an extent as to become oppressive, and is not warranted by anything in the case. Questions relating to mere criminal charges or acts which might be the foundation for prosecutions should not be permitted, unless there are circumstances in the case suggesting that justice will be promoted thereby; and it would be a clear abuse of judicial discretion to permit such questions where the indications were plain that the purpose is not to bring out the truth in regard to the witness' life and character, and to thereby discredit his testimony, but for the purpose of discrediting the witness, regardless of whether there is any warrant for the questions or not, and if he be a party, in that way to influence the minds of the jurors against him."

It is not suggested that there was any bona fide effort to attack the general character of the accused as a witness—in fact, the trial judge suggests that the question might have been intended to test his memory—and if for that purpose, it was certainly improper. We are convinced therefore that, under the circumstances of this case, it could have had but one purpose and effect, and that was to prejudice the jury against accused, and should not have been permitted.

### Bill No. 7.

[10] The defense placed upon the stand the sheriff of the parish to prove his signature to a document reading as follows:

"September 30th, 1921.
"To Whom This May Concern: That Andre Allemand is hereby appointed special deputy sheriff to keep peace at public balls of Fernest Prejean and this will be your authority for so doing.         [Signed] Louis Fontenot,
"Sheriff of Acadia Parish, La."

And, upon being asked if his signature was affixed thereto, stated that it was, but that he had warned "all of those to whom he had given this document, and Andre Allemand among the number, not to carry a concealed weapon." When Allemand took the stand in his own behalf, he was asked, on cross-examination, "Who gave you the authority to carry a concealed weapon there that night?" which was objected to upon the ground that there was no evidence to show that the witness had carried a concealed weapon that night. The reason given by the court for overruling the objection was that, "the door having been opened" by the examination of

the sheriff and the production of the document above quoted, this was legitimate cross-examination on the point as to whether or not he was acting as an officer at the time, presumably authorized to carry a weapon and to interfere in any disturbance of the peace.

·In the circumstances, we see no error in the ruling, as it appears to have been proper ·cross-examination in rebuttal of the intended purpose of the defense in going into the matter.

### Bill No. 8.

[11-13] Bill No. 8 presents for review the ruling permitting the state to ask the accused, Allemand:

"Did you go around the room all the time with your gun in your hands, or did you carry it in your pocket where other people carry it?"

Objection was made that the answer would incriminate the accused.

Of course, accused, as a witness in his own behalf, was subject to all the rules applicable to other witnesses; but he also enjoyed the same immunities, and he could no more be compelled to answer a question accusing himself of another crime, in violation of his constitutional rights, than any one else. As said by us, in State v. Murphy, 45 La. Ann. 958, 13 South. 229:

"There are two modes of guarding against the abuse of a witness on cross-examination who testifies in his own behalf as a defendant:
"(1) The privilege to decline to answer any question which may tend to charge him as a criminal.
"(2) The power of the court to protect the defendant from unreasonable or oppressive cross-examination."

It makes no difference how relevant the evidence may be; if the effect of compelling him to answer, as it was in this case, is to charge himself with a crime other than the one for which he is being tried, it is his privilege to decline to answer. Section 11, art. 1, Const. 1921; Wharton's Crim. Ev. (10th Ed.) vol. 1, § 214, p. 213 et seq.; Saylor v. Commonwealth, 97 Ky. 184, 30 S. W. 390.

We hold, therefore, that the ruling was reversible error.

### Bills Nos. 9 and 10.

The issues raised by these two bills are not likely to recur upon the new trial to be ordered herein, and we therefore think it unnecessary to pass upon them.

### Bill No. 11.

Defendants asked the court to give to the jury the following charge:

"If you believe from the evidence that the defendant Allemand attempted to arrest the deceased and he resisted arrest and attempted to draw a weapon, then I charge you that the defendant Allemand had a right to defend himself."

Which was refused for the reason that—

"There was no evidence at all that deceased resisted arrest, but, on the contrary, he was running away when shot in the back and heel."

[14] The court does not have to give a charge which has no application to the facts of the case, or upon legal questions as to which there is no evidence whatever in the case. Marr's Crim. Juris. 778, and cases in footnotes.

[15] The charge was further objectionable, in that it was not qualified by the condition that the jury should find that the accused was acting as a duly authorized officer, or believed that he was so doing, and would therefore have the right to defend himself in the exercise of his duties. Without such authority, or the bona fide belief that he had it, his rights would have been no greater than those of any other private individual.

For the reasons assigned, the verdict and sentence in this case are set aside, and the cause is remanded to be proceeded with according to law and the views herein expressed.