**75 So.2d 333**

**STATE of Louisiana**

**v.**

**Edgar LABAT and Clifton Alton Poret.**

**No. 41718.**

July 2, 1954.

Rehearing Denied Oct. 5, 1954.

G. W. Gill, Mark W. Sackett, Rudolph F. Becker, Jr., New Orleans, for appellants.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Severn T. Darden, Dist. Atty., Herbert J. Garon, Asst. Dist. Atty., George J. Gulotta, Executive Assistant Dist. Atty., New Orleans, for appellee.

HAWTHORNE, Justice.

The defendants Edgar Labat and Clifton Alton Poret, charged in a bill of indictment with the crime of aggravated rape denounced by Article 42 of the Louisiana Criminal Code, R.S. 14:42, were tried, adjudged guilty, and sentenced to death. From their convictions and sentences they have appealed.

In the early hours of the morning of November 12, 1950, while the prosecuting witness and her escort, Robert Penedo, both white persons, were walking along a street in New Orleans, they were assaulted by the two defendants, both of whom were Negroes. The defendant Labat after threatening to shoot Penedo robbed him, and at the same time the defendant Poret dragged the prosecuting witness into an alley and after tearing her clothing from her body proceeded, with the assistance of the other defendant who had in the meantime joined him, to rape her. The defendant Labat was arrested in New Orleans shortly after the commission of the crime. Despite diligent efforts the police were unable to find the defendant Poret because he had become a fugitive from justice. He was found almost two years after the commission of the crime in a Tennessee penitentiary, where he was serving a term to which he had been sentenced on August 9, 1951, about nine months after the rape of the prosecuting witness in this case.

In the proceedings in the lower court the defendant Poret through his counsel reserved and perfected seven bills of exception, and the defendant Labat through his counsel reserved and perfected 27 bills of exception. Of these bills, Bill No. 5 perfected by counsel for the defendant Poret has been abandoned, and Bills Nos. 17, 20, and 23 reserved by counsel for Labat have likewise been abandoned. Although counsel for each defendant reserved separate bills which were separately numbered, we shall consider these bills in accordance with the provisions of Article 501 of the Code of Criminal Procedure that, whenever a bill of exception has been reserved in any criminal proceeding in which more than one defendant is on trial, it shall be presumed, unless the contrary clearly appears, that the bill has been reserved by all of the defendants on trial. In discussing these bills, however, we shall designate them by refer-

ence to the defendant on whose behalf they were actually reserved.

#### Labat Bill of Exception No. 1.

■ This bill was reserved to the refusal by the trial judge to grant to the defendant Labat his prayer for oyer of a statement or confession made by him. The State answered the defendant's prayer for oyer by admitting that it had in its possession a written statement or confession but alleging that it did not intend to offer this statement or confession in evidence. The trial judge informs us in his per curiam that his ruling was based on the State's written answer that it did not intend to offer the confession in evidence and did not offer this confession in evidence.

The ruling is correct. Since the State did not rely on or offer in evidence the written statement or confession, this statement in its hands was no more than a written statement of a witness or a police report in the hands of the district attorney to be used by him in the preparation of the case. If the State had intended to use the confession, the defendant would have been entitled to a pre-trial inspection, but, since it did not, this argument amounts to nothing more than an effort to have the court extend the doctrine of the case of State v. Dorsey, 207 La. 928, 22 So.2d 273. See State v. Mattio, 212 La. 284, 31 So.2d 801; State v. Simpson, 216 La. 212, 43 So.2d 585; State v. Haddad, 221 La. 337, 59 So.2d 411. Furthermore, since the State did not offer the confession in evidence, the defendant Labat was in no way prejudiced by the refusal of the judge to grant him a pre-trial inspection of it.

#### Labat Bill of Exception No. 2.

■■ This bill was reserved to the refusal of the trial judge to order the State to furnish all the particulars sought by this defendant in his motion for a bill of particulars. In answer to this motion the State informed the accused of the time, the day, and the place of the offense charged, but refused to inform him whether the State would contend that there existed a conspiracy between the two defendants and, if so, what part this defendant was alleged to have played or performed, or whether the State would contend that this defendant was a principal, or whether he actually committed the crime of rape in fact, and whether there was an actual penetration of the prosecuting witness by this defendant, or whether the State would contend that he merely aided or assisted his co-defendant in the commission of the alleged rape.

Defendant contends that the refusal of the trial judge to order the State to furnish the information sought denied to him the right to be informed in writing of the nature and cause of the accusation against him. There is no merit in this contention. The indictment itself informs him of the nature and cause of the accusation against him, and it was sufficient for this purpose. See State v. Michel, 225 La. 1040, 74 So.2d 207,

and authorities therein cited. The indictment also informs him that he was charged as a principal. The answer to the motion for a bill of particulars in the instant case gave this defendant all the information necessary for a proper defense to the charge, and what he was really seeking was to have revealed to him the evidence which the State expected to offer on the trial of the case, or, in other words, advance factual information on the State's case. Moreover, the granting or refusal of a bill of particulars addresses itself to the sound discretion of the trial judge. State v. Poe, 214 La. 606, 38 So.2d 359, and authorities therein cited. See also State v. Simpson, 216 La. 212, 43 So.2d 585; State v. Robertson, 158 La. 300, 103 So. 821. We find no abuse of discretion in the instant case.

Labat Bills of Exception Nos. 3, 4,
5, and 6; Poret Bill of
Exception No. 1.

These bills result from the refusal of the trial judge to quash the indictment against these defendants. The motions to quash are based on the ground that persons of the Negro race because of their race were discriminated against and unlawfully and systematically excluded from the general venire, from the grand jury panel involved, and from the grand jury which indicted these two Negroes, and that they were thereby deprived of due process and the equal protection of the laws guaranteed by the state and federal Constitutions. To these motions the State objected and filed a

demurrer on the ground that the motions in behalf of these defendants were not timely filed under the provisions of Article 202 of the Code of Criminal Procedure of this state. This objection or demurrer was sustained by the trial judge.

Article 202 of the Code of Criminal Procedure has been interpreted and construed by this court to mean that any objection to the manner of selecting or drawing a grand jury or to any defect or irregularity in the empanelling and selection of a grand jury must be urged and filed before the expiration of three judicial days after the grand jury term expires or before entering upon the trial of the case if it is begun sooner. State v. Wilson, 204 La. 24, 14 So.2d 873, appeal dismissed 320 U.S. 714, 64 S.Ct. 202, 88 L.Ed. 419. See also State v. Michel, 225 La. 1040, 74 So.2d 207.

The grand jury which indicted these defendants was empanelled on September 5, 1950, and the indictment was returned on December 11 of that year. The grand jury term ended, and this grand jury was discharged, on *March 5, 1951*. Both defendants filed their first motions to quash on November 7, 1952, approximately a year and eight months after the expiration of the term of the grand jury which indicted them.

The defendant Labat, who was arrested and imprisoned shortly after the commission of the crime, was represented by able, learned, and experienced counsel appointed by the court to represent him on January 5, 1951. Thus this defendant had counsel for

a period of more than two months prior to March 8, 1951, the last day on which under the article any objections to the irregularity in the empanelling of the grand jury, etc., could be filed. In this court Labat's present counsel give no explanations or reasons why the motion was not timely filed, and accordingly under the provisions of the article the trial judge was correct in refusing to consider his motion.

Counsel for Labat contend that the article is unconstitutional, for what reason we are somewhat at a loss to ascertain from a reading of their brief. By this we mean that we cannot ascertain whether counsel contend that the article denies the defendant equal protection of the law or that the article deprives him of due process. If their contention is that it denies to him the equal protection of the law, this contention has been fully answered by this court in the case of State v. Wilson, supra, and is without merit.

In brief counsel argue that the article, in effect, deprives a person charged with a crime of the right to be indicted by a fair and impartial jury and the right to be tried by such a jury, and by this we presume they mean that it deprives the defendant of due process of law. The article does not deprive the accused of a trial by a fair and impartial jury. It merely fixes a period of time in which any objection to the manner of selecting or drawing a jury must be urged. It does not deny to a defendant an opportunity to present any objection or plea

that he may have to the empanelling of the grand jury, but provides merely that such objection or plea must be filed within a certain period of time. It does not deprive him of his life, liberty, or property without an opportunity to be heard in accordance with the regularly established rules of practice, pleading, and procedure.

The police were unable to arrest the defendant Poret because immediately after the commission of the crime he became a fugitive from justice. He was finally found in Tennessee, where he was serving a term in a penitentiary to which he had been sentenced on August 9, 1951, about nine months after the date of the commission of the crime in Louisiana. Counsel for Poret under these facts argues that it would have been impossible for him to file his motion to quash on or before March 8, 1951, or within three judicial days after the expiration of the term of the grand jury which indicted him, and that for this reason Article 202 of the Code when applied to him is unconstitutional because under these facts it deprives him of the equal protection of the law and of due process as guaranteed by the Constitution of the United States.

██ It is not true that the defendant Poret was denied an opportunity to file his motion timely. He was indicted on December 11, 1950, and had until March 8, 1951, a period of almost three months, in which to file his motion to quash. His own actions to avoid prosecution caused him not to avail himself of his right to challenge the jury.

During the time he could have filed the motion he was a fugitive by his own choice and will. If we concede that his flight made it impossible for him to file the motion timely, he himself brought about the situation which made it impossible. To our minds it would be improper to hold that the prescriptive period provided in the statute is applicable to an accused held under arrest within the jurisdiction of the court but is not applicable to an accused who of his own will and accord has absconded to avoid prosecution. Such a holding would be tantamount to rewarding the absconding person for his flight. Moreover, the article provides for a prescriptive period which runs against the accused, and he cannot by any acts of his own extend the time provided for the filing of the motion.

Defendant cites and relies on the case of Carter v. Texas, 177 U.S. 442, 20 S.Ct. 687, 688, 44 L.Ed. 839. In that case the defendant, a Negro, filed a motion to quash the indictment on the ground that the jury commissioners appointed to select the grand jury which found the indictment selected no persons of color or of African descent but on the contrary excluded such persons from the list of persons to serve as grand jurors because of their race and color, and that such discrimination denied to him the equal protection of the laws and his civil rights as guaranteed by the Constitution of the United States. An article of the Code of Criminal Procedure of the State of Texas, Code Cr.Proc.1895, art.

397, Vernon's Ann.C.C.P. art. 358, provided in part that "Any person, before the grand jury have been impaneled, may challenge the array of jurors, or any person presented as a grand juror; and in no other way shall objections to the qualifications and legality of the grand jury be heard." The Supreme Court of the United States reversed his conviction and remanded the case, concluding that the defendant had been denied a right claimed by him under the Constitution of the United States. In doing so the court pointed out that the grand jury which indicted the defendant had been empanelled before the commission of the offense for which he was indicted, and that under this article he therefore never had an opportunity to challenge the array of the grand jury.

We might observe that under the quoted Texas article no person indicted would ever have an opportunity after indictment to challenge the array of the grand jury which indicted him. This is not true under our article, and, as we have hereinabove pointed out, the defendant in the instant case was not denied an opportunity to file his motion to quash and have it considered by the court, but his failure to avail himself of this opportunity was caused by his flight. Under the circumstances of this case the case cited and relied on is not pertinent or controlling.

We conclude therefore that under the facts of the instant case application of Article 202 to this defendant does not deprive him of the equal protection of the law and

due process as guaranteed by the Constitutions of this state and the United States.

### Labat Bill of Exception No. 7.

■■ The court denied a motion for a severance, and this bill was reserved. At the hearing of this motion no showing was made that the defenses of these defendants were conflicting or antagonistic, and it is well settled in the jurisprudence of this state that the granting of a severance is not a matter of right but lies within the sound discretion of the trial judge, which will not be interfered with unless exercised arbitrarily and prejudicially. Article 316, Code of Criminal Procedure; State v. Gournet, 43 La.Ann. 197, 9 So. 436; State v. Desroche, 47 La.Ann. 651, 17 So. 209; State v. Adam and Baptiste, 105 La. 737, 30 So. 101; State v. Gresham, 132 La. 594, 61 So. 681; State v. Hill, 160 La. 579, 107 So. 433; State v. Livsey, 190 La. 474, 182 So. 576.

### Labat Bills of Exception Nos. 8, 9, 10, 11, 12, 13, and 19; Poret Bill of Exception No. 3.

All of these bills were reserved to the overruling of objections to questions asked the prosecuting witness, with the exception of Bill No. 19 which concerned a question asked Detective Arthur Jordan. In the majority of these bills the objection was made that the question was leading, in others no reason was given for the objection, and in still others the objection was

that the question was repetitious. Typical examples of the questions are these:

(1) "Miss ——— [the prosecuting witness], do you know whether there was a light on the corner of Thalia and South Tonti Streets?" Upon objection the court instructed counsel for the State to reframe the question, and the following question was then asked: "Miss ———, what was the lighting condition that night or early morning with respect to Thalia and South Tonti?"

(2) "Did you meet Robert Penedo that night?"

The trial judge in his per curiams to these bills informs us that some of the questions propounded were not leading; that others were merely preliminary or preparatory questions and, if they were leading, were not objectionable; that others were necessary to explain and clarify the facts which the State was attempting to prove.

■■ We have carefully considered all of the questions and the objections made to them, and find no merit in any of these bills. It is well settled that considerable latitude must be left to the trial judge in ruling on the form of questions to witnesses; that a conviction will not be reversed because the trial court allowed leading questions except where a showing is made that there was a clear abuse of such discretion calculated to have prejudiced the accused's rights, and that, while counsel should not be permitted to lead a witness,

a verdict will not be disturbed on that ground when the subject was relevant unless there was a clear abuse of discretion. State v. Allemand, 153 La. 741, 96 So. 552; State v. Hollingsworth, 160 La. 26, 106 So. 662; State v. Fuller, 164 La. 718, 114 So. 606; State v. James, 165 La. 822, 116 So. 199. Moreover, it is well settled that a bill of exception must state the grounds of objection or point out specifically the errors complained of in order that an opportunity may be given the trial judge to correct them, and that, if it is not sufficiently specific, it will not avail the party raising it. State v. Antoine, 189 La. 619, 180 So. 465; State v. Green, 36 La.Ann. 185; State v. Carroll, 160 La. 199, 106 So. 782; State v. Keife, 165 La. 47, 115 So. 363. In none of these bills, either where the ground of objection was stated or where no ground for objection was stated, is there any showing that the trial judge abused his discretion in a manner calculated to have prejudiced the rights of these accused.

Labat Bills of Exception Nos. 14 and 18.

 These bills were reserved to the trial judge's overruling of objections to questions asked Robert Penedo, the companion of the prosecuting witness, and a police officer, Robert Barrere. Penedo was asked whether the prosecuting witness said anything, and he answered that "She said it was terrible, that's all I remember her saying". The police officer was asked whether the prosecuting witness made a complaint to him, and he replied that her answer was that "she had been attacked in an alleyway taken there by two Negroes". The objections in both instances were that the answers of the witnesses would call for hearsay testimony. The trial judge overruled these objections on the ground that the evidence in both instances was admissible as part of the res gestae and further, as to the officer's testimony, to show a complaint made by the prosecuting witness to the officer. The declarations of the prosecuting witness were made to these two witnesses immediately or within a very short time after she had been raped and while she was still crying and hysterical, and near or at the place where the rape had occurred, under the following facts and circumstances:

While the prosecuting witness was being attacked in the alley, her companion ran from the scene and summoned the police. He armed himself and returned within a few moments, and at about the same time Officer Barrere and other police arrived and gave chase to, and fired at, someone fleeing from the vicinity of the crime. One of the officers and Penedo called the name of the prosecuting witness several times, and upon hearing a woman's voice they went in the direction from which the voice came and met the prosecuting witness.

 Res gestae are events speaking for themselves through the instinctive and spontaneous words or acts of the participants; and exclamations made by the par-

ties during or immediately after the commission of the crime and in the excitement of the occasion are generally regarded as part of the res gestae. Article 447, Code of Criminal Procedure; State v. Molisse, 38 La.Ann. 381; State v. Carter, 106 La. 407, 30 So. 895; State v. Williams, 158 La. 1011, 105 So. 46; State v. Mackles, 161 La. 187, 108 So. 410; State v. Bussey, 162 La. 393, 110 So. 626; State v. Fisher, 168 La. 584, 122 So. 858. Under Article 447 what forms part of the res gestae is always admissible in evidence.

Moreover, a person to whom a complaint has been made by the victim of a rape may testify as to the particulars of the complaint made by the prosecutrix against the accused immediately after, or contemporaneously with, the commission of the crime, not as proof of the truth of the statement made but as part of the res gestae. See Marr's Criminal Jurisprudence, sec. 127, pp. 224, 225. Under the facts and circumstances the rulings of the trial judge were correct.

Labat Bill of Exception No. 15;
Poret Bill of Exception No. 2.

Upon his arrest the defendant Labat was taken to the police station and was there identified from a group of several individuals by Robert Penedo, the escort of the prosecuting witness at the time she was raped. During the trial Penedo was called to testify as to what occurred at the police station and to show

that he had identified Labat. For this purpose he was asked the question: "Suppose you say what you did?" To this he answered:

"I identified Labat right away and after I identified him the police took Labat and myself in a room and asked me if that was the man and I said yes and asked Labat if he knew me. He admitted I was the man—"

Counsel for the defendants requested a mistrial on the ground that the part of the witness's answer that "He admitted I was the man" was evidence of a confession made by the defendant Labat which was inadmissible because the assistant district attorney had not stated to the jury in his opening statement that he expected to prove any statement or confession made by Labat to anyone or to show that Labat had answered questions asked him by anyone. This request for a mistrial was denied by the judge, but the judge immediately instructed the jury to disregard the remark of the witness, and, when a bill was reserved, the judge again instructed the jury to disregard the remark.

That part of the witness's answer of which the defendants complain was not responsive to the question asked him but was volunteered by the witness himself, as the State asked the witness only to state what he did. There is no merit in this bill, for, as stated in State v. Rugero, 117 La. 1040, 42 So. 495, 496, "* * * We do not think a trial can be defeated by the

act of a witness in volunteering an objectionable remark", particularly where the trial judge instructs the jury to disregard the remark. In State v. Martin, 193 La. 1036, 192 So. 694, 695, it was said:

· "Defendant's complaint is not well founded. The unsolicited statement of the witness, to which objection was made, furnishes ·no ground for setting aside the verdict. The trial for a criminal offense can not be defeated or nullified by the act of a witness in making a statement which he should not make and for which the prosecution is not responsible. State v. Rugero, 117 La. 1040, 42 So. 495; State v. Jones, 118 La. 369, 42 So. 967; State v. Wall, 167 La. 413, 119 So. 410; State v. Goodwin, 189 La. 443, 179 So. 591."

▮ Moreover, it must be presumed that the jury followed the instructions of the trial judge. State v. Brannon, 133 La. 1027, 63 So. 507; State v. Newton, 173 La. 382, 137 So. 69; State v. Meharg, 196 La. 748, 200 So. 25.

Labat Bill of Exception No. 16;
Poret Bill of Exception No. 4.

While the State's witness Robert Penedo was on the stand, it was ascertained that shortly after the crime he had made a written statement to the police, which was at the time of the trial in the custody of the State but was not offered in evidence in the case. Counsel for the defendant Poret moved the court to order the State to produce the written statement for the purpose of possible impeachment of the witness on cross-examination and to test his credibility. The court denied the request, and this bill was reserved.

▮ It is well settled in the jurisprudence of this state that the defense is not entitled to any written statement of a witness in the hands of the district attorney or the police department. State v. Mattio, 212 La. 284, 31 So.2d 801; State v. Vallery, 214 La. 495, 38 So.2d 148; State v. Simpson, 216 La. 212, 43 So.2d 585; State v. Haddad, 221 La. 337, 59 So.2d 411. See State v. Dorsey, 207 La. 928, 22 So.2d 273.

Labat Bill of Exception No. 21;
Poret Bill of Exception No. 6.

▮ This bill was reserved in connection with certain remarks made by the assistant district attorney in his closing argument to the jury. The district attorney informed the jury that the defendant Labat had been shown a number of photographs and suggested to the jury that they determine for themselves the circumstances under which Poret's picture may have been identified.

The trial judge in his per curiam informs us that counsel for the State in his closing argument was not going out of the record but was merely drawing his conclusions and deductions from the evidence which had been adduced during the trial. · Out of an abundance of caution, however, the judge instructed the jury at that time that argu-

ment by counsel for either side was not to be considered as evidence in the case. The ruling of the trial judge was correct, for under Article 382 of the Code of Criminal Procedure counsel have the right to draw from the evidence any conclusions which to them may seem fit. In State v. Alexander, 215 La. 245, 40 So.2d 232, 234, this court said:

"It is a well-settled principle that as a matter of law, the prosecuting officer has the right to press upon the jury any view of the case arising out of the evidence—the Supreme Court is bound to credit jurors with common intelligence, conscientiousness, and sense of duty. To justify setting aside a verdict of a jury, approved by the trial judge, on the ground of intemperate or improper remarks made by a District Attorney, we would have to be thoroughly convinced that the jury was influenced by such remarks, and also, that the remarks contributed to the verdict found. State v. Johnson & Butler, 48 La.Ann. 87, 19 So. 213; State v. Hamilton, 124 La. 132, 49 So. 1004, 18 Ann.Cas. 981; State v. Davis, 178 La. 203, 151 So. 78; and State v. Tucker, 204 La. 463, 15 So.2d 854. * * *" See also State v. Dowdy, 217 La. 773, 811, 47 So.2d 496.

Labat Bills of Exception Nos. 24, 25, 26, and 27.

 These bills were reserved to the refusal of the trial judge to give certain requested special charges which are designated as Special Charges Nos. 1, 2, 5, and 8. These requested charges deal with the function of a bill of particulars, the difference between identity and identification, and responsive verdicts to the crime charged in the indictment. Counsel cite no law in support of their argument that these charges should have been given, and we know of none. There is no merit in any of these bills, and there is no necessity for us to quote the requested charges. The trial judge in his per curiams to these bills shows that he considered that these charges, respectively, were not pertinent, required explanation, were covered by the general charge, and were not a correct statement of the law. In refusing to give these special charges he was entirely correct, for Article 390 of the Code of Criminal Procedure provides that "* * * the judge must give every such requested charge that is wholly correct and wholly pertinent, unless the matter contained in such charge have been already given, or unless such charge require qualification, limitation or explanation."

Labat Bill of Exception No. 22;
Poret Bill of Exception No. 7.

 These bills were reserved to the overruling by the trial judge of defendants' motions for a new trial. The grounds upon which these motions are based are all matters which we have already considered and discussed in connection with the other bills reserved, except that in the mo-

tion filed by Labat he contends that there was no evidence whatsoever upon which to prove the charge or any lesser one contained in the indictment. There was evidence adduced upon which a conviction could be based, and this court cannot pass upon the sufficiency of the evidence, which is a matter within the exclusive province of the trial judge and jury. It is only where there is no evidence at all that a question of law arises for our consideration.

For the reasons assigned the convictions and sentences are affirmed.