99 So.2d 62

**STATE of Louisiana**

v.

Jasper **BRAZILE.**

No. 43715.

Jan. 6, 1958.

Rehearing Denied Feb. 10, 1958.

Ben F. Holt, Jules L. Davidson, Jr., Le-Doux R. Provosty, Jr., Alexandria, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., F. Jean Pharis, Dist. Atty., Vincent Hazleton, William Ray Bradford, Jr., Asst. Dist. Attys., Alexandria, for appellee.

HAWTHORNE, Justice.

Defendant Jasper Brazile was tried for the murder of Floyd Lee Drewett, convicted, and sentenced to death. Two previous convictions of the defendant for this crime have been reversed by this court,[1] and this appeal is from his third conviction.

Bills of Exception Nos. 1 and 2 were reserved to refusals of the trial judge to excuse for cause a prospective juror, J. H. Kichens, Jr. These bills were taken during the examination of this prospective juror on his voir dire, and the basis of the challenge was that the juror had a fixed opinion as to the guilt or innocence of the accused and would not accord him the presumption of innocence.

The portion of this juror's voir dire examination during which Bill No. 1 was reserved is as follows:

"Q. Now I understand Mr. Kichens, that an opinion is a thing that is personal to you and no one else knows your opinion unto yourself, the law states the defendant is entitled to presumption of innocence. Now, if you are unable to give him that presumption of innocence, *why* it is your time to speak now. Do you think you can give him that absolute presumption of innocence at the outset of this trial? A. Well, I'd be frank in saying that I followed the other two trials through the newspaper and it occurs to me that there is some presumption of guilt on the part of the defendant. Due to the fact that he was previously convicted twice. I must admit I know that to be a matter of record."

We have read the entire voir dire examination of this juror and think that the trial judge properly denied defendant's challenge for cause. In his per curiam the judge informs us:

"* * * A review of the entire voir dire examination of this prospective juror will show that he stated under oath on six or seven separate and distinct occasions that even though he had an opinion in this case he could lay this opinion aside and enter on the trial giving the accused a presumption of innocence and base his decision solely on the evidence adduced during the trial and the law as the Court gave it to him.

"The Supreme Court of this State has held many times that the test of com-

1. See State v. Brazile, 226 La. 254, 75 So.2d 856; Id., 229 La. 600, 86 So.2d 208.

petency of a juror, as disclosed by voir dire examination, cannot be limited to an isolated answer given by him but is dependent upon the examination as a whole and particularly the answers to questions by the Court. In the case of State v. Jones, 175 La. 1014, 144 So. 899, we find this statement by the Court:

" 'The ruling was correct. The mistakes which the juror made in some of his answers on the voir dire examination, concerning the presumption of innocence and the duty of the jury to give the defendant the benefit of any reasonable doubt, were, manifestly, caused by embarrassment and misunderstanding, and did not reflect the mental attitude of the juror in that respect. The voir dire examination, as a whole, showed that Mr. Evans was qualified to serve on the jury. We who are accustomed to courtroom scenes and judicial proceedings can hardly realize how embarrassing it must be to a layman, not accustomed to such scenes or proceedings, to have to undergo the ordeal of a public examination on questions of law and on his mental attitude towards questions which he believes the questioner and those surrounding him have superior knowledge. The qualifications of a person to serve on the jury in any case must be determined from the whole of the voir dire examination, and not from excerpts of answers which, standing alone, would disqualify the person for jury service.'

"See also the more recent cases of State v. Henry, 200 La. 875, 9 So.2d 215; State v. Futch, 216 La. 857, 44 So.2d 892; State v. McDonald, 224 La. 555, 70 So.2d 123; State v. Brazile, 229 La. 600, 86 So.2d 208, which cases follow the ruling of State v. Jones cited above."

■ The fact that prospective jurors have impressions or opinions formed from reading of newspaper reports does not make them incompetent where such impressions are not fixed and will yield readily to the evidence adduced on the trial of the case, and where the jurors on their voir dire examinations state that they will decide the case solely on the evidence adduced during the trial. See State v. Hamilton, 155 La. 1069, 99 So. 874.

■ Bill No. 2 was perfected under the following circumstances during the voir dire examination of this juror:

"By Mr. Davidson:

"Q. * * * If you were called upon to render a verdict right at this point, without the state or the defense putting on any evidence, and understanding the law as explained to you by the Court, what verdict would you render? A. I would render none at this time.

"Q. If you were called upon and had to render a verdict, what verdict would you render? A. Well, I can't conceive of a circumstance under which you—

"Q. Will you answer my question, sir, yes or no? A. Your Honor, I don't quite understand.

"By The Court: Well, the juror has answered the question as fairly as he knows how, I believe, and there is no other answer— A. I can't conceive of a circumstance which without being on the jury and the trial taking place—

"Mr. Davidson: I submit the juror for cause. It's obvious he doesn't the law as explained by the Court.

"By The Court: As I understand the question of counsel was to ask the juror for a yes or no answer. * * *"

We think it clear that the juror was confused and did not fully understand this particular question. In fact, he himself said so. He evidently thought that he was being called upon to state what his verdict would be at that particular moment, though he was not on the jury and the trial had not taken place.

As stated previously, we think the qualifications of a prospective juror must be determined from the whole of his voir dire examination and not from single or isolated answers to questions. This entire examination shows that this juror would lay aside any opinion that he might have formed from reading the newspapers and would try the case solely on the law and the evidence adduced at the trial and would afford the defendant the presumption of innocence.

We do not think there is any merit in these two bills.

Bills of Exception Nos. 3 and 4 were likewise reserved when the trial judge refused to sustain challenges for cause of prospective jurors Silas L. Bruce and Fabien Van Hoof.

■ Bill No. 3 was reserved in the following circumstances: Prospective juror Bruce admitted that he knew Brian Hathorn, employer of the murdered man and owner of the filling station where the crime occurred, and had at one time rented from him, and, further, that at one time he had had an opinion as to the guilt or innocence of the accused, and that this opinion was that the defendant was guilty. This juror stated that he had known Brian Hathorn since 1948; that at one time he rented a garage from him for a period of about 18 months; that, however, he.had not seen Mr. Hathorn in six years and during his acquaintance he did not consider himself a personal friend. With reference to his opinion previously formed, the trial judge in his per curiam to this bill tells us:

"Considering first the question of whether this prospective juror was disqualified for having a fixed opinion, a reading of the entire voir dire examination of 'this juror will show that he did at one time have an opinion in this case, based on what he-had heard on the radio, read in the newspaper and heard in casual discussions with other

citizens, but he, from the very beginning of his examination, stated that this was not a fixed opinion and that he could lay this opinion aside and enter upon the trial of this case giving the accused the presumption of innocence and render his verdict solely on the basis of the evidence introduced during the trial and the law as the Court gave it to him. There is not a single answer by this prospective juror which even remotely indicates that he had a fixed opinion which he could not readily lay aside."

The fact that he was acquainted with Mr. Hathorn and at some time previously had rented a garage from him is not sufficient grounds to disqualify the juror under a challenge for cause, as these relationships, to us, cannot reasonably create the belief that they would have influenced him in arriving at a verdict in this case, especially in view of the fact that the juror plainly stated under oath that they would not.

 Bill of Exception No. 4 involves a challenge for cause of prospective juror Fabien Van Hoof because of his acquaintance with an assistant district attorney and also with Mr. Hathorn, the employer of the deceased. The examination of this juror shows that he was acquainted with Mr. Hathorn. It shows also, however, that he knew Mr. Hathorn five or six years ago but since that time had not seen him except to speak to occasionally on the street. As to the assistant district attorney, this prospective juror said that he had known him since high school days and had had an office in the same building with him for the previous five years, but that he was not a close personal friend of the assistant district attorney. The juror stated that the fact that he was acquainted with both the assistant district attorney and Mr. Hathorn would not influence him or weigh with his verdict in any way, and that his relationship to these persons would not influence his decision in this case.

After reading the entire examination on his voir dire we agree with the trial judge that this prospective juror was qualified, and accordingly we think the trial judge properly refused to sustain the challenge for cause.

During the progress of the trial counsel for the defendant in open court moved for a mistrial. This motion was overruled by the trial judge, and Bill of Exception No. 5 was reserved.

 One of the grounds urged for a mistrial concerns an assistant district attorney, Mr. Edwin O. Ware III. Mr. Ware on his own motion had been recused in this case because he had assisted in the defense of this accused on a previous trial.[2] Counsel for defendant contend that despite

2. Mr. Ware was appointed an assistant district attorney after he had acted as attorney for the defendant. See State v. Brazile, 231 La. 90, 90 So.2d 789.

his recusation Mr. Ware actually assisted in the trial of this case, but they have adduced no evidence in support of this allegation. Moreover, in connection with this alleged error the sworn testimony of Mr. Ware was taken, and this testimony discloses, as pointed out by the trial judge in his per curiam, that he did not "either before or after his recusation, assist in the preparation or trial of this case in any way whatsoever".

■ Two other grounds urged have to do with statements made by prospective jurors during their voir dire examinations. While prospective juror John P. Norsworthy was being examined by the district attorney on his voir dire, he was asked whether he had any conscientious or religious scruples against capital punishment, and he replied, "Not in this case, no sir." Further, in response to the question "Do you have a fixed opinion in this case", he replied, "Yes, you bet I do."

While another prospective juror, Eric Harris, was being examined on his voir dire, in response to the question whether he thought he could lay aside and disregard an opinion that he had formed and could give to the accused the presumption of innocence, he replied: "Well, I think I could, but I don't know if I would want to be the one who would reverse the opinion of 24 other people."

Neither one of these men served on the jury that tried defendant, both being excused for cause by the court.

Counsel for defendant concede that the statements of these two jurors were not responsive to any questions of the district attorney, but argue nevertheless that the statements were made in the presence of the jurors who had already been selected and in the presence of prospective jurors, and consequently were highly prejudicial and denied defendant a fair trial.

At the outset it is to be noted that counsel for defendant did not object to the statements of these prospective jurors and did not reserve and perfect bills of exception at the time the statements were made, as required by Articles 498 and 499 of our Code of Criminal Procedure. In the absence of such an objection and a perfected bill it is extremely doubtful that these grounds for a mistrial present anything for us to review. See State v. McDonald, 218 La. 198, 48 So.2d 797; State v. Honeycutt, 218 La. 362, 49 So.2d 610, and the numerous authorities cited therein; State v. Weber, 221 La. 1093, 61 So.2d 883; State v. O'Brien, 226 La. 807, 77 So.2d 402.

The trial judge in his per curiam informs us that although no objection was made to these statements, he did, out of abundance of precaution, in his charge to the jury instruct them specifically to disregard and not to consider in any way whatsoever any and

all statements made by prospective jurors during their examination and to decide the case solely on the evidence adduced during the trial and the law as the court gave it to them. Although the unresponsive statements of the jurors may have been improper, we do not think they constitute reversible error especially in view of the charge given by the trial judge.

█ Moreover, there is still another reason why defendant was not entitled to a mistrial on these grounds. The law is well settled that the trial for a criminal offense cannot be defeated or nullified by the act of a witness who makes some statement which he should not make and for which the prosecution is not responsible. In State v. Lea, 228 La. 724, 84 So.2d 169, 172 this court said:

" * * * A new trial should not be granted because some witness or prospective juror happens to make some statement that is completely unresponsive to any question propounded to him and for which neither counsel nor the court are in the slightest measure responsible. State v. Simpson, 216 La. 212, 43 So.2d 585 and authorities cited therein."

Again, in State v. Labat, 226 La. 201, 75 So.2d 333, 341, we find the following:

"That part of the witness's answer of which the defendant complains was not responsive to the question asked him but was volunteered by the witness himself, as the State asked the witness only to state what he did. There is no merit in this bill, for, as stated in State v. Rugero, 117 La. 1040, 42 So. 495, 496, ' * * * We do not think a trial can be defeated by the act of a witness in volunteering an objectionable remark', particularly where the trial judge instructs the jury to disregard the remark. In State v. Martin, 193 La. 1036, 192 So. 694, 695, it was said:

" 'Defendant's complaint is not well founded. The unsolicited statement of the witness, to which objection was made, furnishes no ground for setting aside the verdict. The trial for a criminal offense can not be defeated or nullified by the act of a witness in making a statement which he should not make and for which the prosecution is not responsible. State v. Rugero, 117 La. 1040, 42 So. 495; State v. Jones, 118 La. 369, 42 So. 967; State v. Wall, 167 La. 413, 119 So. 410; State v. Goodwin, 189 La. 443, 179 So. 591.' "

The next grounds urged concern certain statements and remarks made by the district attorney and the assistant district attorney during the trial.

█ The statement of Mr. Ben F. Thompson, the district attorney, was made during the redirect examination of a witness for the State, Detective C. L. Michiels, under the following circumstances, as stated by the trial judge:

"* * * This incident occurred while the witness, on redirect examination, was being questioned by Mr. Ben F. Thompson, Jr. regarding a written statement given by the accused to the police officers shortly after the crime. During cross-examination, counsel for the defense had examined this witness in detail as to this written statement of the accused and then on redirect examination the District Attorney was reading certain excerpts from the statement and asking the witness if they correctly represented the statements made by the accused. Counsel for the defense objected to the District Attorney following this procedure and requested that the District Attorney read the entire statement instead of certain specific portions thereof. After an argument amongst counsel as to whether this objection was good the District Attorney stated to the Court 'I am going to drop the whole thing your Honor, I don't think it is important enough to go into'."

When the quoted statement was made, counsel for the defendant objected, and at counsel's request the court at that time instructed the jury to disregard this comment on the evidence by the district attorney and not to consider it in any way.

We do not think this remark was prejudicial, but even if it was, before setting the verdict aside in the instant case we would have to be convinced that the remark influenced the jury and contributed to the verdict. If the remark could possibly be considered prejudicial, then the instructions of the court to disregard it would have nullified its prejudicial effect.

In State v. Jackson, 227 La. 642, 80 So.2d 105, 109, it was said:

"* * * Under the jurisprudence of this court, before a verdict approved by the judge is set aside on the ground of improper argument of such a nature as this, this court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Ailes, 133 La. 563, 63 So. 172; State v. Shoemake, 143 La. 65, 78 So. 240; State v. Davis, 178 La. 203, 151 So. 78. We concede that this is often very difficult to do. However, we do think that the remarks in the instant case were improper and out of place, and that the trial judge upon objection of counsel for the defendants should have instructed the jury to disregard them. The judge did not, however, give such instructions, which, if given at the proper time, would have nullified the possibly prejudicial effect of such an improper statement. State v. Brown, 166 La. 43, 116 So. 588; State v. Dowdy, 217 La. 773, 47 So.2d 496, certiorari denied 340 U.S. 856, 71 S.Ct. 75, 95 L.Ed. 627."

It was said in State v. Dowdy, 217 La. 773, 47 So.2d 496, 509:

"Be that as it may, we are of the opinion that in this case the instruction of the court

had the effect of erasing from the minds of the jury any prejudice that may have been produced by the district attorney's remark. The general rule is that instructions of the court at the proper time nullifies the prejudicial effect of an improper statement made by a prosecuting officer during the course of the trial. See State v. Brown, 166 La. 43, 116 So. 588. It is only in extreme cases, we believe, that the prejudice cannot be so removed and we do not consider that the remarks objected to in this case were of such an extreme nature that the court's instructions did not have the proper effect. * * *"

 The statement of the assistant district attorney was made under the following circumstances: During the trial there arose some question as to whether the jury should be removed while the court heard evidence as to the admissibility of a written statement made by the defendant, and in response to a question by the court whether it was desired to have the jury removed, the assistant district attorney stated: "Your Honor, I am so gunshy I am afraid to say anything."

Counsel for defendant argue that this statement made by the assistant district attorney was "unquestionably aimed at the fact that the accused had been convicted on two previous occasions and that the Supreme Court of the State of Louisiana had reversed both convictions on the grounds of technicalities".

We first observe that no objection was made at the time the statement was made and no bill of exception reserved. If this had been done, the judge could have instructed the jury to disregard the remark. In the case of State v. Henry, 200 La. 875, 9 So.2d 215, 220, it was said:

"The last bill of exception was reserved to the ruling of the trial judge overruling defendant's motion for a new trial, in which motion was incorporated, in addition to the seven bills of exceptions just disposed of, an alleged improper emphasis placed upon a remark by the district attorney during the course of his closing argument before the jury to the effect that the defendant's two previous convictions had been reversed by the Supreme Court on technicalities.

"This court will not review any alleged improper argument by the prosecution unless timely objected to and the necessary reservation of a bill of exceptions thereto. State v. Shoemake, 143 La. 65, 78 So.2d 240; State v. Dalcour, 145 La. 1008, 83 So. 223; and State v. Menard, 169 La. 1197, 126 So. 921."

Moreover, even if objection had been made and a bill reserved to this remark, it would not be cause for setting aside the verdict unless, as stated above, we were convinced that the jury had been influenced by the remark and that the remark had contributed to the verdict. We do not think the statement was prejudicial and do not think it influenced the jury or contributed to the

verdict in any way whatever. See State v. Jackson and State v. Dowdy, both cited above.

Furthermore, the trial judge informs us in his per curiam that he specifically instructed the jury in his charge that they were to consider only the evidence adduced during the trial of the case and were not to consider any comment or remarks made by the prosecuting attorney during the examination of prospective jurors or witnesses. These instructions nullified any possible prejudicial effect of the statement complained of. See State v. Jackson and State v. Dowdy, supra.

Bills of Exception Nos. 6 and 7 were taken to the overruling of defendant's motions for a new trial and in arrest of judgment. All the grounds urged for a reversal of the conviction set out in these motions were incorporated in the bills of exception which we have already discussed, and present nothing further for review.

Counsel, however, argue in support of the motion for a new trial that it was highly prejudicial and inflammatory to the jurors selected to sit through the balance of the voir dire examination after their selection and see the parade of prospective jurors excluded for cause because of a fixed opinion or otherwise.

We do not think that the mere fact that the jurors who had been accepted heard the examinations of prospective jurors and observed some of these being excused entitles the defendant to a new trial on the ground that such procedure influenced the jurors already selected to such an extent that they could not grant the defendant a fair and impartial trial. If the defendant had believed that he could not obtain a fair and impartial trial in the parish where the indictment was found, his remedy was to apply for a change of venue before trial, and not to wait until after verdict before complaining of alleged prejudice against him. State v. Vial, 153 La. 883, 96 So. 796; State v. Carricut, 157 La. 140, 102 So. 98.

The conviction and sentence are affirmed.