somewhat greater than is justified by the evidence, and that plaintiff will be fairly compensated in that respect by an allowance of $600.

It is therefore ordered that the decree handed down be amended by reducing the total amount allowed from $1,000 to $800, and that, as amended, said decree stand as the final judgment of the court.

Rehearing refused.

---

(42 South. 967.)

No. 16,365.

### STATE v. JONES.

(Jan. 7, 1907. Rehearing Denied Feb. 4, 1907.)

1. CRIMINAL LAW—APPEAL—REVIEW—HARMLESS ERROR — GRAND JURY — VALIDITY — DRAWING.

Where a sufficient number are left on the venire of grand jurors to complete the panel, the defendant has no ground for complaining that because of one of the venire having been a minor and four others having been excluded by the judge, and one more having failed to attend, the grand jury was drawn from a venire of only 13.

2. SAME—JURY—VENIRES—DRAWING—LIST.

A defendant is presumed to know the law, and therefore is presumed to know that venires are drawn for the different weeks of the term, and not for the different days; and hence that a list served on him. headed, "Petit jury for Monday, Oct. 15, 1906," means for the week beginning on that day.

3. CRIMINAL LAW—TRIAL—REMARKS OF PROSECUTING ATTORNEY.

One of the witnesses for the prosecution refusing to repeat an important statement, because, as he said, he had already repeated it several times, there was no impropriety in the district attorney telling him, in the presence of the jury, that it was before the judge, and not before the jury, he had repeated the statement. The remark was harmless; and, moreover, was merely by way of inducement to the stubborn witness.

4. SAME—EVIDENCE.

The conduct of the prisoner when an attempt was made to arrest him, shortly after the commission of the offense, was properly allowed to be proved to show intent.

(Syllabus by the Court.)

Appeal from Twenty-Seventh Judicial District Court, Parish of Assumption; Paul Léche, Judge.

Junius Jones was convicted of murder, and appeals. Affirmed.

Marks & Wortham, for appellant. Walter Guion, Atty. Gen., and Gustavus Adolphus Gondran, Dist. Atty. (Lewis Guion, of counsel), for the State.

PROVOSTY, J. Defendant was convicted of murder, and sentenced to be hanged. He moved to quash, on the grounds:

First. That the venire from which the grand jury was drawn was fatally defective, in that it contained a minor, whereas the jury law (Act No. 135, p. 218, of 1898, § 4, as amended and re-enacted by Act No. 58, p. 136, of 1904) requires that the jurors to compose the said venire shall be selected, and that none but competent jurors shall be selected.

Second. That after the foreman, who is selected by the judge from among the venire of 20, and after said minor, and 4 others whom the judge excused, and one other who failed to attend, had been deducted from the venire of 20, from which the grand jury is required by law to be drawn, there remained only 13 names out of which to draw the 11 remaining jurors to compose the grand jury, and that to draw the grand jury from a list thus reduced is not a compliance with the law which requires that the jury shall be drawn from a list of 20, or, say, 19, after deduction of the foreman, who is to be selected from the 20.

In State v. Voorhies, 115 La. 200, 38 South. 964, this court said:

"The accused cannot complain that particular jurors were excused or were absent; there being a sufficient number present to complete the panel."

This covers defendant's objections, since the real gist of the objections is that the jury had to be drawn from a decimated venire.

Defendant's next complaint is with regard to the service of the jury list upon him. The document served upon him was of the follow-

ing tenor: It contained the title of the case, and after that, the following:

"To Junius Jones, you are hereby notified that the following is a list of the jurors who will be called upon to pass upon your case fixed for trial on Tuesday, the 16th of October, 1906."

Then came two printed lists of names, headed, respectively, "Petit Jurors for Monday October 8, 1906," and "Petit Jurors for Monday October 15, 1906." Defendant, whose case had been reassigned from the 16th to the 18th, objected to going to trial, on the ground that he had not been served with a list of the jury, as required by law. His argument is that the list of jurors served upon him was not stated to be that for the second week of the term, but that for Monday, the 15th, and that the document served upon him, while sufficient, perhaps, to advise him that the same jurors of Monday 15th would serve on his trial on the 16th, was certainly not sufficient to advise him that these same jurors would also serve on the 18th, and that the document contained no intimation to that effect.

We think this is bringing down matters to too fine a point. The accused is presumed to know the law, and to know, therefore, that venires are drawn for the different weeks of the term and not for the different days, and that the two lists, the one for "Monday Oct. 8th" and the other for "Monday Oct. 15th," meant for the weeks beginning on those days. State v. Ward, 14 La. Ann. 674.

Defendant's next complaint is to a remark of the district attorney. A witness testified that the accused had said to him, "I'll kill that woman," referring to the woman for whose killing defendant was being prosecuted. The district attorney asked the witness to repeat the statement, and the witness answered, "I done said it three times," whereupon the district attorney made the remark complained of, namely, "Yes; you have stated so to the court. Now state it to the jury." The remark is said to have been injurious to the accused, in that it conveyed to the jury the information that the witness had made the same statement repeatedly to the judge, whereby emphasis or weight was added to the testimony as given before the jury, which had been in a hesitating, halting, and reluctant manner.

As we understand the situation, the district attorney had in the witness one of these crotchety individuals who consider it below a man's dignity to repeat, and the remark complained of was merely to induce the stubborn witness to talk. Under these circumstances the action of the district attorney was perfectly legitimate. At any rate, as observed by the trial judge, it was perfectly harmless.

The next complaint is to the admission of testimony said to have been irrelevant. Premising that the time referred to by the witness was about an hour after the killing, and the place about three miles from that of the killing, we will give the testimony objected to in the words of the witness:

"Q. Please state the circumstances under which you attempted to capture him and the reasons therefor. A. I arrived home by the train. He was pointed out to me as being the man who had murdered a woman in Labadieville. He was then about five acres from me on the railroad. I had a gig at the depot. I got into it and drove out to the public road, with the idea of intercepting him at the Brusly railroad crossing. I borrowed a gun on my way. When I came within about 100 yards from the crossing, he appeared in sight. I jumped out of my gig and hollowed to him to throw up his hands. At the same time I noticed he had a pistol in one of his hands, and he threw his hands up and started to shoot, pointing his gun at me. I exchanged shots with him, and after he shot twice he darted down in the cane field from the railroad. It was a short time after that, when the officers arrived with the dogs, I joined in the chase. After that we kept it up until dark, and we gave it up, having run him in the woods."

The reason for admitting the evidence was that it went to show intent. Defendant's learned counsel argue that the conduct of the defendant in firing at his assailant and then running did not indicate a conscious-

ness of guilt; that what he did was the natural thing for him to do when he saw a man, not an officer, coming upon him with a pointed gun and calling upon him to throw up his hands; that the sole effect of the evidence was to prejudice the case of defendant by showing that he, a colored man, had fired upon a white man.

We think the ruling was correct. The woman killed was defendant's own wife, and the attempted arrest was shortly after the killing, and, in a sense, in the neighborhood. So soon after the tragedy, and so near the scene of it, defendant could not but have known that the purpose of the person who came upon him with the gun was to arrest him. And his conduct in resisting and then flying were indications of a sense of guilt.

The last complaint is to the use of the word "murdered" by the same witness, in the sentence, "The man who had murdered a woman in Labadieville." The witness was first examined out of the presence of the jury, and was warned not to use the word "murdered," but the word "killed"; but it seems he did not hear, or did not understand, the judge, and so, in his testimony, used the word "murdered." As was said by this court in the recent case of State v. Jos. Rugero, 42 South. 495,[1] a trial cannot be defeated or nullified by the act of a witness in using an expression which he should not have used, and for which the prosecution is in no wise responsible.

Judgment affirmed.