178 So.2d 266

**STATE of Louisiana**

**v.**

**Wilson SIMIEN.**

No. 47730.

July 2, 1965.

Dissenting Opinion Filed July 21, 1965.

Rehearing Denied Sept. 30, 1965.

Larry A. Roach, Lake Charles, A. J. Planchard, Sulphur, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Bryan Forrest, Gill, Asst. Dist. Atty., for appellee.

HAWTHORNE, Justice.

Wilson Simien, convicted of attempted aggravated rape and sentenced to 15 years at hard labor in the state penitentiary, has appealed.

On February 26, 1964, at about 8:00 or 9:00 p. m., a young man and a young woman, students of McNeese State College, were sitting in a parked automobile on a street in Lake Charles. A Negro man

came up to the car on the driver's side, thrust a pistol into the open window, and forced the occupants under a threat to kill them to get out of the car and go to a knoll in a nearby field. At this place he made an attempt to rape the young woman, all the while threatening both that if they did not obey his orders, he would kill them. When the young man made his escape, the would-be rapist pursued and shot at him, and the girl fled to safety. About 11:00 o'clock the next morning the appellant was arrested at his place of employment and confined in the Calcasieu Parish jail.

■ During the selection of the jury, in the presence of jurors already selected and others waiting to be examined on their voir dire, the court routinely asked three of the prospective jurors whether they knew the accused. One of them said that he did, and volunteered the information that he was employed as an officer at a Louisiana penal institution and had known the accused while the latter was an inmate of that institution. This juror was immediately excused by the court. According to the trial judge's per curiam, after the noon recess counsel for the defense moved for a mistrial on the basis of the response of the prospective juror. The trial judge denied this motion for a mistrial, and his ruling was correct. It is well settled under the law of this state that an unsolicited reply of a witness (and the same would be true of such a remark by a prospective

juror) does not constitute grounds for a mistrial or for reversal of the verdict, especially when, as here, counsel did not object at the time the statement was made so that the judge could at that time instruct the jury to disregard the statement. In State v. Labat, 226 La. 201, 223, 75 So.2d 333, we quoted with approval from State v. Martin, 193 La. 1036, 192 So. 694, 695, as follows:

" * * * The trial for a criminal offense can not be defeated or nullified by the act of a witness in making a statement which he should not make and for which the prosecution is not responsible. State v. Rugero, 117 La. 1040, 42 So. 495; State v. Jones, 118 La. 369, 42 So. 967; State v. Wall, 167 La. 413, 119 So. 410; State v. Goodwin, 189 La. 443, 179 So. 591."

■ This incident, as stated, would not of itself entitle the accused to a mistrial. However, it becomes more serious when it is considered with the circumstances given in another bill, taken during the questioning of a witness in the course of the trial.

The State called as a witness the superintendent of the penal institution in which according to the prospective juror the accused had been confined. The district attorney by his questions elicited from this witness that he had been the superintendent of this penal institution and also that he had been a deputy sheriff of the parish at the time the crime was committed. He

then asked the witness: "Have you ever seen this defendant Wilson Simien before?" The witness replied: "Yes, sir, I have." The district attorney then asked: "I won't ask you how, but did you know him prior to February 26, 1964 [the date of the crime]?"

At this point counsel for the accused objected, and upon the jury's being withdrawn they requested a mistrial on the ground that the question created an inference indicating to the jury that this defendant had a previous criminal record and had been confined in a penal institution. It is the position of appellant that these two bills when considered together should warrant the granting to him of a new trial.

We are not informed what the district attorney's purpose was in asking these questions of the witness, but it appears that the district attorney was attempting to place the previous criminal record of the accused before the jury by an indirect method, a thing he could not do directly unless, for instance, the accused took the stand and testified in his own behalf. This line of questioning, under the circumstances, was, to say the least, highly improper, but our decision to grant appellant a new trial is for other and more serious reasons.

■ For conviction in this case the State relied on an oral confession made by the accused. Counsel for the accused objected to the admission of this confession on the grounds (1) that it was not affirmatively shown that the confession was freely and voluntarily made, and (2) that this oral confession was made without defendant's being advised of his right to counsel and without the benefit of counsel.

The accused was arrested at about 11:00 a. m. on February 27. At intervals during day and night for more than 48 hours he was questioned by relays of officers, and the oral confession was obtained on February 29 at about 4:15 p. m. All of these officers testified that the oral confession made by the accused was free and voluntary, that he was not threatened or harmed, and that the statement was made without any inducements or promises.

To rebut this testimony the accused took the stand out of the presence of the jury and testified that from the time he was arrested at 11:00 a. m. on February 27 until after he made the statement in the late afternoon of February 29 he was given no food although he had asked for it, and that officers who were questioning him told him they would give him any kind of food he wanted if he would make a statement. In sum, his testimony is that he was kept without food for many hours and was promised food if he would confess.

The State did not call any witness to contradict the accused's testimony, and under

these circumstances we do not think that the State has sustained the burden of showing affirmatively that the confession was freely and voluntarily given. In State v. Honeycutt, 216 La. 610, 44 So.2d 313, the sole question before this court was whether the evidence adduced by the State affirmatively showed that the confession there involved was freely and voluntarily made; that is to say, the question for decision was whether the State had discharged the burden of proving the confession admissible. In that case the accused testified that he confessed at the time of his arrest because of physical mistreatment and threats by certain officers, none of whom was called to rebut this testimony. In the course of that opinion we said, citing and relying on State v. Robinson, 215 La. 974, 41 So. 2d 848, 854 (on rehearing):

"We think that, after the accused here had testified as to the mistreatment he received and the threats made against him in order to induce him to confess, the five officers present at the time, or any of them available, should have been called and examined with respect to the particulars to which the accused had testified, in order that the trial judge might have been afforded a better opportunity to weigh and decide the very important issue of whether the confession was freely and voluntarily given.

"The trial judge permitted the confession to be introduced in evidence because he concluded, according to his per curiam, that the testimony of the accused was unworthy of belief. The admission of the confession in evidence against the accused, for this reason only, deprived him of the protection guaranteed to him by the Constitution and laws of this state and denied to him a fair and impartial trial, since other witnesses were available to testify concerning the matter. The burden was on the State to show affirmatively that the confession was free and voluntary."

It is not our intention here to hold, nor do we hold, that the oral confession of the accused in the instant case was obtained by illegal means in violation of his constitutional rights; but we do hold that the State did not affirmatively show the confession's voluntary character for its admission, since the State failed to rebut or deny the specific accusations made by the accused that he was denied food and was promised food if he would confess.

For this reason appellant is entitled to a new trial. At this new trial the State will be afforded an opportunity to rebut the testimony given by the accused, and the trial judge can then determine from all the evidence whether the confession was freely and voluntarily given.

■ We next come to counsel's contention that this oral confession was made without defendant's being advised of his right to counsel and without the benefit

of counsel. The record shows that the officer to whom this confession was given on the afternoon of February 29 advised the accused at his first interview with him, which was shown to be in the early evening of February 28, that he was entitled to an attorney if he wanted one,[1] and, further, that at the time this officer obtained the oral confession on February 29 he again informed the accused that he did not have to make any statement and that he was entitled to counsel before he made any kind of statement or confession.[2] The accused never at any time requested counsel although he was told that he could have an attorney, and therefore it cannot be said that he was denied the benefit of counsel.

In any event, counsel's contention that the oral confession was inadmissible because it was made without the accused's being informed of his right to counsel and without the benefit of counsel is without merit under our holding in State v. Rideau, 242 La. 431, 137 So.2d 283 (reversed by the United States Supreme Court on other grounds, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663).

■ Counsel in brief filed in this court make the additional contention, not made in the court below, that the oral confession in this case was inadmissible because it was obtained from the defendant after an arrest made without probable cause and

without a warrant. Since no objection on this ground was made in the trial court and embodied in a bill of exception, no evidence is before this court showing the facts and circumstances attendant upon the arrest, for evidence can be brought before this court in criminal cases only by being annexed to and made part of a bill of exception timely reserved. The presumption is that the arrest was legal, and in the absence of any evidence on this point this court cannot assume that it was illegal and accept the statement of the appellant that it was. State v. Green, 244 La. 80, 150 So.2d 571, and numerous authorities there cited.

■ Moreover, there is no law of this state which requires that as a predicate for the admission of a confession the State must prove that the defendant had been lawfully arrested when the confession was given. Under our law, if a confession is shown to be free and voluntary and if proper reference is made to it in the State's opening statement, it is admissible.

■ During the course of the trial the State offered in evidence a print of defendant's left thumb taken shortly after he was imprisoned in the jail on February 27, and also a latent print taken from the automobile in which the young man and the girl were sitting when they were approached by their assailant; and the State

---

1. Testimony of Cormier, Tr. p. 161.

2. Testimony of Cormier, Tr. pp. 103–104.

identified the latent print obtained from the car with the print of the defendant's left thumb taken shortly after his arrest. Counsel objected to the introduction of this evidence on the ground that defendant had not been advised of his right to counsel at the time the thumbprint was taken following his arrest, and that he was not at that time told that information thus obtained could constitute evidence against him.

The defendant bases this argument on the Fifth Amendment to the Constitution of the United States and Article 1, Section 11, of the Constitution of the State of Louisiana, both of which provide that no person shall be compelled to give evidence against himself.

The basis of the argument is invalid. Fingerprinting is not considered within the privilege against self-incrimination. United States v. Kelly (C.C.A.2d), 55 F.2d 67; see 8 Wigmore on Evidence, secs. 2263, 2265, pp. 378, 386 (McNaughton rev. 1961); 2 Wharton's Criminal Evidence, 12th ed. 1955, sec. 664, p. 580; Annotation, Fingerprints, palm prints, or bare footprints as evidence, 28 A.L.R.2d 1115; Model Code of Evidence (American Law Institute 1942), Rule 205(a).

During the proceedings in the court below counsel for the defendant moved the court to order the district attorney to furnish them with a copy of a written statement obtained from the accused.

The district attorney took the position that the statement was not an admission or confession, and that consequently counsel were not entitled to a copy of it. Counsel for defendant then requested that the court examine the statement and determine whether it was an admission or confession. The judge below refused to order the district attorney to produce the statement, and refused to examine it to determine whether it was in fact an admission or confession.

The testimony concerning this matter, which is attached to the bill of exception, discloses that the district attorney informed the court that any statement of defendant which was in writing would not be offered in evidence "unless, of course, he [the defendant] gets on the stand and makes a contradictory statement".

The trial judge in his per curiam says that he denied the motions of defense counsel on the basis of this court's decision in State v. Labat, 226 La. 201, 75 So.2d 333. In that case we sustained a ruling of the trial judge refusing counsel for the defense a pretrial inspection of a written confession or statement made by the defendant. The basis of our holding was that the State did not intend to offer the confession in evidence and did not offer it in evidence, that under these circumstances the statement constituted no more than a written statement of a witness or a police report in the hands of a district attorney to

be used by him in the preparation of his case, of which counsel would not be entitled to a pretrial inspection, and that since the State did not offer the confession in evidence, the defendant was not prejudiced by the refusal of a pretrial inspection.

In the Labat case the State did not rely on a confession of any kind, either oral or written, for conviction of the accused. This is not so in the instant case, for here the State relied, among other evidence, on an oral confession to establish the guilt of the accused. Furthermore, the district attorney here admitted that he would use this written statement if the accused took the stand and gave contradictory testimony.

In State v. Dorsey, 207 La. 928, 22 So.2d 273, this court held that counsel for the accused was entitled to a pretrial inspection, under the supervision of the court, of a written confession of the accused when it was shown that the State relied on and intended to use this confession in the trial of the case. In many cases since that decision this court has refused to extend the doctrine there announced. State v. Mattio, 212 La. 284, 31 So.2d 801; State v. Simpson, 216 La. 212, 43 So.2d 585; State v. Martinez, 220 La. 899, 57 So.2d 888; State v. Haddad, 221 La. 337, 59 So.2d 411; State v. Labat, 226 La. 201, 75 So.2d 333; State v. Lea, 228 La. 724, 84 So.2d 169. We are still of the view that the holding in each of these cases refusing to extend the doctrine was correct.

In the instant case, however, the State offered and relied on an oral confession, and the district attorney admitted in the trial court that he intended to use the written statement made by the accused, said not to be a confession or admission of inculpatory facts, in the event the accused took the stand and gave contradictory testimony.[3] In other words, the district attorney said in effect: I may or may not use the statement. I will if the accused takes the stand and makes a statement contradictory to what he said in his statement taken in writing.

Under these facts and circumstances the district judge should have examined the statement in question as requested by counsel for the accused so that he, and not the district attorney, could determine whether the statement was in fact a confession or admission. If it had been found to be such, counsel for the accused should have been permitted to see and inspect the statement so that they could decide whether it would be of any aid to the jury in its determina-

3. If the statement was a confession or an admission of inculpatory facts, it would not be admissible either in chief or in rebuttal or for purposes of impeachment unless the State had laid the proper predicate for its admission by mentioning it in the opening statement and by showing that it was freely and voluntarily given. State v. Palmer, 232 La. 468, 479 ff., 94 So.2d 439, and authorities cited.

tion of the weight and effect to be given to the oral confession offered and relied upon by the State.

For the reasons assigned the conviction and the sentence are annulled and set aside, and the case is remanded to the district court for a new trial.

HAMITER, J., concurs in the results.

SUMMERS, J., dissents and assigns written reasons.

SUMMERS, Justice (dissenting).

I do not agree that the unsupported, uncorroborated statement of the accused that he had not had food from the time of his arrest to the time when the State established that he made an oral confession (approximately 54 hours) should have the effect of rendering the confession inadmissible, especially when the State has affirmatively established the free and voluntary nature of the confession.

The majority opinion rests upon the rule announced in State v. Honeycutt, 216 La. 610, 44 So.2d 313 (1950), which is interpreted to require that the State rebut all evidence, whether creditable or not, tending to show that the confession was extracted by force, abuse, intimidation or other undue influence. But this rule is, I submit, subject to a reasonable interpretation and a reasonable application to the particular facts of each case. Thus if the State has affirmatively established the free and voluntary character of the confession in laying the predicate for its introduction, it should not be necessary, and the law does not require, that the State again introduce evidence to rebut all of the unsupported testimony of the accused to the contrary, when the trier of fact is satisfied with the first proof. What the majority, in effect, requires by its decision is a rebuttal to a rebuttal whether or not the evidence being rebutted is creditable. I disagree with this requirement. In my opinion uncorroborated testimony which the trial judge does not believe is really no testimony and requires no rebuttal, unless there are other facts which would warrant a reasonable belief that the testimony is creditable.

At the trial, when evidence was taken outside the presence of the jury in the State's effort to establish the predicate for the admission of the confession, the deputy sheriffs, who had questioned the accused and in whose presence the confession was made, testified that the accused told them at that time that he had been "well treated" since his arrest; they testified that the accused did not appear to be "tired, worn or haggard," but, "to the contrary, * * * thought he looked very good and he didn't seem to be under any stress or strain," that the accused made no complaints to them but stated that he was

"fine". One of the officers testified further that the accused declared in the presence of three other officers that at the time of the confession he had not been mistreated in any way. Another witness to the confession noted that the physical condition of the accused was "very good" and that he did not appear to be "tired, drawn or haggard."

The testimony of others who interrogated the accused on other occasions is to the same effect.

In my opinion this evidence adequately contradicts the unsupported statement of the accused to the contrary for it shows that the accused himself declared he had not been mistreated. Under these circumstances the trial judge was fully justified in accepting the State's version of the facts and discounting the later statement of the accused that he had not eaten for 54 hours. Under these circumstances it would be cumulative and would serve no purpose for the State's witnesses to repeat what they had already testified to.

It should be kept in mind, too, that defense counsel had ample opportunity to cross-examine the State's witnesses concerning the claim of the accused that he had not eaten since his arrest. They did not, on any occasion, examine the State's witnesses on this point.

Moreover, the record unequivocally shows that the accused has consistently denied that he made any confession. Actually, at the trial, then, the accused's position was not that the confession was not free and voluntary, *but that he never made a confession.* The positions are inconsistent to say the least, and undoubtedly account for the lack of credibility attached to his testimony by both the trial judge and the jury.

Long established guidelines to be applied in determining the admissibility of confessions in criminal cases are clearly expressed in State v. Domino, 234 La. 950, 956, 102 So.2d 227, 229 (1958) as follows:

"The question of the admissibility of a confession is for the judge, its effect for the jury, and whether a sufficient basis was laid for the admission of an alleged voluntary confession is a question of fact upon which the ruling of the trial judge will not be disturbed unless clearly against the preponderance of the evidence."

The majority has accepted the vague, inconsistent and unsupported testimony of this accused against the preponderating testimony of at least six officers of the law to the contrary. By so doing the court has disregarded the fundamental principle of law expressed in the Domino case.

The one other reversible error which the majority finds is the trial court's denial of defendant's motion to have the district attorney furnish for inspection a written

statement made by the accused. The district attorney asserted that the statement was not a written confession or admission and would not be used unless the accused took the stand and contradicted its content. The trial court then refused to permit its inspection prior to trial. In so doing the court relied upon the authority of State v. Labat, 226 La. 201, 75 So.2d 333 (1954). In my opinion this was not an error, but was a correct ruling based upon the law of this State at that time. See State v. Lea, 228 La. 724, 84 So.2d 169 (1955). The majority of this court, by this decision, extends the rule of State v. Labat which had its origin in State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945). If this decision stands an accused will be permitted to compel the production of statements in the district attorney's file under the pretense that they may be an aid in the determination of the weight and effect to be given to an oral confession relied upon by the State.

In my opinion this is an unwarranted and unprecedented action by this court. The written statement in question has never been introduced in evidence and there was no reason to permit an inspection of it any more than there is to permit the inspection of any other written statement in the prosecutor's file. This statement could not have been used as a confession or admission for, as I understand the record, the district attorney in his opening statement made no reference to any other

written confession or admission. The accused, therefore, could not have been prejudiced by the court's refusal to permit the inspection and the accused was denied no then existing legal right. La.Code Crim. Proc. art. 557.

I respectfully dissent.