315 So.2d 678 (1975)
STATE of Louisiana
v.
Troy Lee PETERS.
No. 55822.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied July 25, 1975.
*679 Richard W. Watts, Watts & Cassidy, Franklinton, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., W. W. Erwin, Dist. Atty., John N. Gallaspy, Bogalusa, for plaintiff-appellee.
BARHAM, Justice.
Troy Lee Peters was convicted of armed robbery in violation of La.R.S. 14:64 and sentenced to thirty years at hard labor, without benefit of parole, probation or suspension of sentence. Defendant relies upon two specifications of error. Because we find error in the trial judge's refusal to suppress inculpatory statements allegedly made by defendant, we do not reach the merits of his second argument.
On the evening of September 1, 1973, Troy Lee Peters, two of his brothers, and a friend rode into Bogalusa from their home in Angie, and were stopped by police for a traffic violation. When the police officers discovered that Troy Lee's brother, the driver of the car, had no driver's license, they took him to the Bogalusa jail and set his bail at $1,000 property or $95 cash.
Defendant removed a tape player from the car and left the police station with a view toward getting help or selling the tape player to raise bond for his brother. He went first to a service station, where he spoke to Mr. Vernon Freeman, who testified that defendant was polite and friendly. The defendant offered to sell the tape player to Freeman, but left the service station when Freeman said he would only pay $15 for it.
It was at this point, at approximately 3:00 a.m., that defendant approached Mr. James Stewart, the alleged victim of the armed robbery. Stewart, a dealer for the *680 Times-Picayune, testified that he was standing at the rear of his truck assembling newspapers when defendant walked up to him and tried to sell him a tape player. Stewart claimed that he told defendant he was not interested in buying the player and that he turned back to his work when defendant walked away. He said that he was then struck across the shoulders and fell on the ground. When he looked up, he claims to have seen defendant standing over him, holding what looked like a "two by four." Stewart testified that in response to defendant's demand for money, he gave him his checkbook.
Defendant, on the other hand, maintained throughout his testimony that when he asked Stewart to buy the tape player, Stewart said he would not "do anything for no damn nigger." This led to an argument and defendant claims that he picked up a stick in the street and struck Stewart to protect himself, because he feared Stewart was going to hit him. He denies that he took a checkbook or anything else. About an hour and a half later, he was arrested at a lounge and taken to police headquarters.
Defendant responded to questioning by Lieutenant Pritchard and Sergeant Penton, the interrogation beginning at approximately 5:20 a.m. At the hearing on the motion to suppress defendant's alleged inculpatory statements, the police officers testified that they read defendant his rights from a printed form, which defendant initialed, and that his oral statement was reduced to writing upon his request. In the signed statement the defendant admits he struck Stewart with the stick but makes no mention of taking the checkbook. Both officers testified that no special favors were offered the defendant, and that they did not strike or otherwise abuse him in order to compel him to confess. Moreover, Sergeant Penton testified that the defendant called him to his cell approximately three hours after he signed the statement, and told him that he had flushed the checks down the commode at the lounge where he was arrested. However, at trial Penton testified that defendant told him that he had flushed the checks down the commode at the jail. The checks were never found.
Defendant, on the other hand, testified at the motion to suppress that at the 5:20 a.m. interrogation Lieutenant Pritchard threatened him with violence, used harsh language to compel him to sign the written statement and backhanded him, breaking his tooth and bruising his lip. Peter displayed his broken tooth for the judge at the hearing. He claimed that he signed that statement only because of the physical duress to which he was subjected; he further disclaims any other conversation with any officer and denies ever having admitted to Sergeant Penton that he flushed checks down a commode.
Defendant's brother testified that he saw Troy Lee immediately before he was interrogated and that he was not physically injured; he further stated that when he saw him shortly after he had been alone with Penton and Pritchard, Troy Lee's tooth was broken and his lip badly bruised. Likewise, defendant's mother, while quite honestly admitting that her son had given her a great deal of trouble, swore that she had seen her son the day before the questioning and that his tooth was not broken nor his lip bruised, whereas those signs of physical abuse were present two days after he was arrested and incarcerated. The State offered no evidence rebutting the testimony of Peters, his mother, or his brother that he suffered an injury to his mouth, nor did it attempt to explain how his tooth was broken and his lip bruised.
The following provisions of Louisiana law are pertinent to our inquiry:
La.R.S. 15:451:
"Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not *681 made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."
La.R.S. 15:452:
"No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel a confession of crime."
La.C.Cr.P. art. 703(C):
"On the trial of a motion to suppress filed under the provisions of this article the burden of proof is on the defendant to prove the grounds of his motion, except that the state shall have the burden of proving that a purported written confession or written inculpatory statement was made freely and voluntarily and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises."
La.Const. Art. I, § 11 (1921):
"No person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution. No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made."
Voluminous jurisprudence interpreting these provisions has firmly rooted into Louisiana law the proposition that before a confession may be admitted into evidence, the State has the burden of proving affirmatively and beyond a reasonable doubt that the statement was made freely and voluntarily by the defendant and not through coercion. See, e.g., State v. Thomas, 242 La. 210, 135 So.2d 275 (1961); State v. Stewart, 238 La. 1036, 117 So.2d 583 (1960); State v. Michel, 225 La. 1040, 74 So.2d 207 (1954); State v. Wilson, 217 La. 470, 46 So.2d 738 (1950). It is true that the decision of the trial judge on the question of whether a confession is free and voluntary is entitled to great weight. State v. Hall, 257 La. 253, 242 So.2d 239 (1970). However, a reviewing court cannot avoid its responsibility to examine the record to be certain that the State has fully borne its heavy burden of proof in these cases.
A review of the jurisprudence indicates some of the circumstances that have convinced this Court to disturb the trial court's finding that the State had proved beyond a reasonable doubt that the defendant's confession was free and voluntary. For instance, in State v. Robinson, 215 La. 974, 41 So.2d 848 (1949), in the face of testimony by the jailer, to whom defendant had allegedly confessed, that the confession was free and voluntary, and by one of the officers who questioned the defendant that the accused had not been mistreated, this Court reversed the trial court's finding that the confession was free and voluntary. The Court said:
"We are, nevertheless, of the opinion that the record as made up fails to establish the state discharged its burden of establishing affirmatively the confession was freely and voluntarily made. We think that after the accused testified in detail about the mistreatment he received and the inducements offered him at the time he confessed, the jailer should have been recalled and re-examined with respect to the particulars testified to by the accused in order that the trial judge might have been afforded a better opportunity to weigh and decide this very important issue." 41 So.2d at 854.
In State v. Honeycutt, 216 La. 610, 44 So.2d 313 (1950), we again concluded that the State had not offered sufficient proof of the confession's voluntary character to sustain the trial court's admission of his statement. There the accused testified that he was mistreated and threatened in order to induce him to confess. Only the deputy *682 sheriff who was alleged to have abused defendant was called by the State to rebut defendant's testimony. Because the State could have called some or all of the five other officers who were present at the questioning, thereby affording the trial court a better opportunity to weigh and decide whether the confession was free and voluntary, the Court found clearly erroneous the trial judge's admission of the confession merely because he did not believe defendant's testimony.
In State v. Simien, 248 La. 323, 178 So.2d 266 (1965), police officers testified that the oral confession made by the accused was free and voluntary and made without any inducements or promises, and that he was not threatened or harmed in any way. Defendant then testified specifically that he had been deprived of food and offered anything he wanted to eat if he would confess. Because the State failed to call any witnesses to contradict defendant's specific accusations, this Court held that the State had failed to sustain its burden of showing affirmatively that the confession was freely and voluntarily given.
In State v. Monroe, 305 So.2d 902 (La.1974), we reversed the trial court's ruling that the defendant's confession was admissible. We noted that, although the State had offered general testimony by officers that they witnessed no coercion, intimidation, or other undue influence, the State failed to carry its burden of proof since it did not rebut specific testimony by the defendant of coercive treatment outside the presence of those who testified.
Particularly apposite to our consideration here are the facts in the case of State v. Scarbrough, 167 La. 484, 119 So. 523 (1928). In that case, on the hearing to suppress a confession given by the accused, the State offered the testimony of an officer who conducted the interrogation. He stated that neither he nor any of the others questioning defendant had used violence or cruel treatment to induce the statement. However, defendant testified that he was not given adequate food, water and clothing, and that his life had been threatened. The Court held that it was incumbent upon the State to contradict defendant's testimony by calling witnesses to rebut his specific allegations, and stated:
"* * * [T]here are some outstanding and acknowledged facts which leave no doubt that the confession made on the 28th of December was induced by the hardships and exposure to cold which the prisoner was compelled to suffer in the Ninth Precinct Police Station until he consented to make a confession. It was proven beyond all doubt, and was not denied by any one, that he was sick with cold and sore throat and in a wretched condition when the police officers wrapped a blanket about him and brought him to the district attorney's office. 119 So. at 527. (Emphasis supplied).
The facts before us demand, no less than did those in Scarbrough, that we reverse the judge's ruling that defendant's written statement and his alleged subsequent oral statement were admissible. Although the two officers present at the interrogation did testify that they did not physically abuse the accused, the State made no effort to rebut the clear testimony of three witnesses regarding Peters' altered physical condition, nor to explain how he suffered the uncontradicted injury to his lip and tooth. As with the objective symptoms of abuse present in Scarbrough, the defendant's bruised lip and broken tooth were undenied, explicit facts casting grave doubt upon the State's claim that it has borne its burden of proving voluntariness beyond a reasonable doubt.
If defendant's proof was false, it was within the power of the State to offer testimony contradicting the specific claim that his physical condition was altered after the interrogation and to explain how he incurred his injuries. As in the cases earlier discussed, we hold that, under all the facts *683 before us, the State has not upheld its burden of proof because it failed to rebut specifically the testimony of defendant's witnesses when it presumably could have and thereby afforded the trial judge a better opportunity to decide this crucial issue.
Nor do we feel that this Court's decision in State v. Sims, 310 So.2d 587 (La.1975) requires a result different from the one we reach in this case, as argued by the State in its supplemental brief. The Court affirmed the trial court's admission of the confession in Sims because there the State introduced evidence that met and was in direct conflict with the defendant's testimony regarding the circumstances surrounding the incident. In Sims the majority stated:
"* * * It would be superfluous to require the officers to take the stand to repeat what they testified to in the State's affirmative showing. * * *" 310 So.2d at 589.
The majority distinguished the facts in Sims from the jurisprudence discussed earlier herein on the basis that, in those cases, there had been no directly confliciting testimony offered by the State in its presentation on the voluntariness of the confession. It was stated:
"* * * No purpose would have been served by recalling the officers to repeat their testimony. Only when the defendant presents evidence which is not directly contradicted by the officer's original testimony is the State required to present evidence to rebut the defendant's evidence. * * *" 310 So.2d at 590.
In the case before us, it cannot be said that it would serve no purpose or that it would be superfluous to require the State to rebut defendant's testimony. Not only did the State fail to directly contradict the statements made by defendant and his witnesses on the crucial issue of his physical injuries, but that testimony was completely ignored by the State. General allegations by the officers present that no force was used in eliciting the purported confession are insufficient to satisfy the certainty demanded by the law that a confession is free and voluntary before a man's own words may be used against him.
At the time the hearing was held in the trial court on the motion to suppress, the law was clear that it was the burden of the State to prove affirmatively and beyond a reasonable doubt that an inculpatory statement was obtained freely and voluntarily. The State ignored the provisions of La.C.Cr.P. art. 703 and a long line of jurisprudence. The defendant not only presented witnesses supporting his own declaration of physical coercion, but he presented physical evidence which, supported by the lay evidence, conclusively shows specific physical abuse of the defendant in obtaining his inculpatory statement.
Moreover, we are constrained to note a substantial discrepancy in the testimony of one of the police officers on the motion to suppress and at the time of the trial in regard to the time and method by which the defendant told the officer that he had disposed of the allegedly stolen checks. We conclude that all statements introduced by the State were inadmissible.
Although not crucial to our decision here, we wish to point out the rather irregular procedure directed or at least sanctioned by the trial judge in this case. Because La.Code of Criminal Procedure Article 703(C) and La.R.S. 15:451 make it clear that the State bears the burden of proving that a confession was free and voluntary, the State should be obliged to call its witnesses first and to go forward with its proof at the hearing on the motion to suppress. In the present case, defense counsel, rather than the State, called the two police officers who were the State's witnesses and cross-examined them. Only then did the district attorney examine the officers, after which the defense called its own witnesses.
*684 The State should have been required to call the officers on direct examination because only after the State has offered its proof is there any reason for the defendant to call witnesses to rebut their testimony. This error in procedure reveals a basic misunderstanding of the nature of the burden of proof in laying the predicate and meeting the motion to suppress in confession cases and may account partially for the substantive error requiring reversal in this case.
For the reasons assigned, the conviction and sentence are annulled and set aside and the case is remanded for a new trial.
Reversed and remanded.
SUMMERS, J., dissents and assigns reasons.
SANDERS, C. J., and MARCUS, J., dissent for the reasons assigned by SUMMERS, J.
SUMMERS, Justice (dissenting).
Appellant Troy Lee Peters was convicted of armed robbery on May 8, 1974 and was sentenced to imprisonment for thirty years. At issue is the denial of a motion to suppress a confession, which he contends was not free and voluntary.
According to the opening statement, the State expected to prove:
" . . . .that on the date in the indictment that this defendant was attempting to sell a tape which had come out of one automobile; that he first went to a Tenneco Service Station and offered the man there to sell the tape. The man did not want it. Just a few minutes later he accosted Mr. Stewart, the paper delivery man, and tried to sell him the tape. Mr. Stewart advised him that he did not need the tape, and did not want it; that the accused walked several steps from Mr. Stewart and suddenly picked up a stick some three and a half feet long in diameter of which is around two inches, and struck Mr. Stewart on his neck and a portion of his back knocking him off his feet. While he was on the ground that the accused asked him for his money; that rather than money, that the accused obtained a portion of checks from Mr. Stewart. We further expect to prove that he flushed these checks down the toilet seat or down the commode in Bogalusa City Jail after his arrest."

I.
The confession sought to be suppressed and made the subject of the first bill of exceptions is as follows:
"On September 2, 1973 around 3:00 AM, I (Troy Lee Peters) walked to the Tenneco Service Station on Memphis Street and tried to sell the man that was working there a tape player for $25.00 or $30.00 and he told me he didn't have that much that he only had $15.00. I told him that I couldn't sell it to him for that much. I started back to the police station to sit with my brothers car and I seen this paper man putting these papers at R.L. Littles Service Station so I walked over to him and asked him if he would like to buy a tape player and he said no he didn't think he needed it. After he told me that, I walked away then and I seen a board lying beside the street so I picked it up and walked back to where the paperman was working and hit him across the back with the board. When I hit him he staggered and turned and grabbed the board and I tried to pull the board away from him and we dropped it and I picked up the board and ran away. After awhile I threw the board down, and caught a ride to E4th street and went into Big Boy Foster's Private Club. I was in the club between and half an hour and an hour when Patrolman Penton came into the Club and asked me if I had seen the man with the tape player and I told him yes that he had just left.

*685 He told me if I seen him again to call him and I told him I would. Then about 10 minutes later, Ptn. Penton and Lt. Pritchard came back in the club and told me that I was under arrest for Armed Robbery. They brought me to the Police Station and advised me of my rights and I waived my rights and give them a statement to what happened. I made this statement of my own free will. There wasn't any threats or favors to me."
The issue on the voluntary nature of the confession is principally concerned with Peters' contention that he was threatened and struck by Lieutenant Pritchard, a policeman with the Bogalusa Police Department. He testified at the hearing on the motion to suppress that he investigated the appellant's case and arrested and questioned him. The questioning took place at the Bogalusa Police Department in Pritchard's office in the detective bureau about 5:20 in the morning. Patrolman Donald Penton was present at the time. Before the questioning began, Pritchard said, he and Penton advised appellant of his constitutional rights by reading a form and having appellant initial each right to signify that he understood it. He identified the statement as having been typed by him at the request of Peters and as he dictated it. Thereafter appellant signed the statement.
The statement, according to Pritchard, contained the words used by Fort in his confession. He testified that he did not, and had no power to, promise appellant special favors or anything of that nature to induce him to sign the statement. The defense attorney asked him:
"Q. And, realizing that you are under oath, Lieutenant Pritchard, did you give Troy Lee any encouragement, and by encouragement, I mean in the broadest sense of the word to sign that statement and to give the answers to the questions that you asked; did you use any physical encouragement included in particular?
A. No, sir.
Q. None whatsover?
A. No.
Q. And your testimony is that you at no time abused him in any way and at no time struck him or anything of this nature?
A. No, sir, I did not.
Q. Your testimony is his statement was completely voluntary on his part?
A. Yes, sir."
Officer Penton also testified at the hearing. He said he assisted Pritchard in the investigation of the case and the questioning of Peters. They were the only officers with Peters when the questioning took place and when the statement was taken. He corroborated Pritchard's testimony as to the time and place, and the fact and manner of advising appellant of his constitutional rights. He identified the statement as being that given by Peters and typed by Pritchard. Penton took no part in the questioning but observed the entire proceeding. At no time did he encourage appellant, either physically or otherwise, to sign the waiver form or the statement. He was asked by the State's attorney:
"Q. Was there any threats or promises or other forms of duress used either to obtain the signature on the rights form or to the confession?
A. No, sir.
Q. How long approximately did you all take with him, Officer Penton?
A. I'd say forty-five minutes."
According to Penton's testimony, after the statement was taken and appellant was jailed, about nine o'clock that morning a trustee told Penton that Peters wanted to *686 see him. Penton went to see him, and Peters told him that he had flushed the check taken from the victim down the toilet at Foster's Bar. At that time he noticed no emotional or erratic behavior in Peters, nor had he been crying.
Peters testified that on the morning in question he was questioned by Pritchard in Penton's presence. He said he didn't want to sign the waiver of rights but Pritchard, "brutally" made him sign. He testified Penton typed the statement while Pritchard questioned him. Pritchard, who had a gun at the time, said, according to Peters, he would blow his head off if he didn't sign"He was going to run my head against the wall if I didn't tell the truth." He "back-handed me, broke my teeth . . . he beat me in the face . . .", Peters testified. He couldn't say for sure how many times he was struck but thought it was "about three times." A broken tooth was exhibited which he claimed was a result.
To keep from being hit, he said, he signed the statement. He denied taking the checkbook or that he struck the victim with a two-by-four. He did admit, however, that they struggled with a two-by-four and that he hit him with a stick. Although he admitted signing the waiver of rights and the statement, he said he was "forced" to do so. No request was made by Peters to use the telephone. While denying that he knew of his right to do so, he conceded that he had served time twice before for burglary.
The State's attorney asked him: "You now admit you tried to strike this man; you can remember you threw a stick at him, but you don't know whether you hit him or not. Is that your testimony?" To which Peters answered, "Right". However, he denied calling Officer Penton back to the jail to tell him he had flushed the checks down the toilet.
Peters' mother testified that she saw him in the jailhouse two days after he was arrested and charged. His lip was bruised and he had a broken tooth, she said. She had seen him about seven o'clock on the day before his arrest, at which time his tooth was not broken and his lip was not bruised.
Peters' brother Bobby was with him on the night preceding and on the morning of the arrest. He was at the jailhouse while Peters was being questioned and afterwards he saw Peters crying. Peters told him, he testified, that "he got beat up and they pushed him." He noticed that Peters had a busted tooth and bruised lip. Also, he testified that he heard the officers questioning Peters.
On the basis of this evidence, the trial judge denied the motion to suppress. These provisions of law are relevant to the issue:
"No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made." La.Const. art. I, ¶ 11 (1921)
"No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel a confession of crime." La.R.S. 15:452
"Before what proposes (purports) to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." La.R.S. 15:451.
"C. On the trial of a motion to suppress filed under the provisions of this article the burden of proof is on the defendant to prove the grounds of his motion, except that the state shall have the burden of proving that a purported written confession or written inculpatory statement was made freely and voluntarily and was not made under the influence *687 of fear, duress, intimidation, menaces, threats, inducements or promises." La.Code Crim. Proc. art. 703.
From this authority the law requires that upon a motion to suppress a written confession the state has the burden of proving affirmatively that a purported written confession or written inculpatory statement was made freely and voluntarily. It is my opinion that the State has discharged this burden. The matter resolves itself into a question of the credibility of the witnesses. In the State's questioning of Peters, he was asked if he could assign any reason why the officers who had served for many years would lie under oath in court. Peters could assign no reason save that he was black.
If the police had beaten Peters as he contends, they would not have permitted his brother to see him immediately thereafter. The brother's testimony that he heard the officers questioning Peters contradicts the statement of the officers and Peters that no one else was present at the questioning. Peters also testified that his brother and mother saw him between one and two in the afternoon following the day he gave the statement, in contrast to his brother's statement that he saw him crying and injured immediately after the questioning. The interest and bias of the mother and brother in the outcome far outweighs that of the officers, and understandably the trial judge accepted the version of the latter. Crawford v. Bullock, 209 La. 552, 25 So.2d 226 (1946). His judgment was no doubt also influenced by the demeanor of the witnesses on the stand. Glorioso v. Glorioso, 223 La. 357, 65 So.2d 794 (1953).
Although Peters testified that he was beaten and threatened, he signed his name to the statement and initialed the waiver of rights form many times. The entire proceeding lasted only 45 minutes. Peters had twice been sentenced to Angola before this case, and his credibility is, of course, seriously impaired. This fact, together with the contradictions in his testimony contrasted with the consistent and rational testimony of the officers provides a sound basis for the ruling of the trial judge.
Such a determination is entitled to great weight and will not be disturbed unless clearly erroneous. State v. Forman, 271 So.2d 523 (La.1973); State v. Roddy, 263 La. 1064, 270 So.2d 508 (1973); State v. Refuge, 264 La. 135, 270 So.2d 842 (1972); State v. Bradford, 263 La. 966, 269 So.2d 831 (1972); State v. Cosey, 261 La. 550, 260 So.2d 620 (1972); State v. Morris, 259 La. 1001, 254 So.2d 444 (1971), cert. denied, 406 U.S. 959, 92 S.Ct. 2066, 32 L.Ed.2d 346.
In a supplemental brief, defense counsel argues that the State failed to rebut the testimony of Peters to the effect that he had been subjected to force to induce his statement. In State v. Sims, La., 310 So.2d 587, decided March 31, 1975, the identical issue was met. In resolving a like factual situation, we said:
" . . . the officers specifically stated in the State's affirmative presentation that no violence was used against the defendant. No purpose would have been served by recalling the officers to repeat their testimony. Only when the defendant presents evidence which is not directly contradicted by the officer's original testimony is the State required to present evidence to rebut the defendant's evidence."
As the excerpts from the testimony of the officers will reveal, they denied threats, intimidation or violence of any kind whatsoever. No purpose would be served by requiring them to take the stand and repeat those words. Peters' testimony could not be reconciled with theirs, and the proof of the negative had already been accomplished.
I respectfully dissent.