338 So.2d 682 (1976)
STATE of Louisiana
v.
Mervin PAYNE.
No. 58045.
Supreme Court of Louisiana.
October 6, 1976.
Rehearing Denied November 5, 1976.
*683 Vincent Wilkins, Jr., Appellate Counsel, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Mervin Payne was indicted, tried and convicted for the murder of his wife, Betty Ruth Payne, in violation of La.R.S. 14:30. After selection of the jury at his trial, held in January 1970, defendant was permitted to withdraw a not guilty plea and enter a plea of not guilty and not guilty by reason of insanity. During the course of the trial defense counsel reserved four bills of exception. On appeal, however, these bills were not perfected and this *684 Court in State v. Payne, 274 So.2d 693 (La.1973), limited defendant's relief to an annulment of the death sentence which had been imposed, and instructed the trial judge to resentence the defendant to life imprisonment. On September 26, 1975, this Court, in response to defendant's application for writs, authorized, out of time, a second appeal.
Defendant's principal contention (included variously in assignments one, two and three) is that his mentally retarded condition, coupled with his limited ability to read and write, and the alleged failure of the interrogating officers to make a concerted effort to explain his rights to him, effectively precluded a knowing and intelligent waiver of his constitutional rights against self-incrimination, and to representation by counsel, so that the taped statement obtained by the officers and admitted over defense counsel's objection was constitutionally impermissible, and made his conviction reversible.
In his first three assignments of error defendant urges that the trial court erred in admitting over defense counsel's objection a tape recorded statement made by the accused in the presence of interrogating officers, and permitting it to be played by the jury. He contends he had not effectively waived his right to counsel. He argues that the state failed to meet its burden of proving beyond a reasonable doubt that the defendant knowingly and intelligently waived his rights.
Under Louisiana law it is clear that in order for a confession to be admissible, the trial judge must be satisfied that the confession was freely and voluntarily given and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La.R.S. 15:451. The voluntariness of the confession must appear affirmatively on the record, and the state bears the burden of establishing it. La.C.Cr.P. art. 703(C); State v. Stewart, 325 So.2d 819 (La.1976); State v. Washington, 321 So.2d 763 (La.1975); State v. Carter, 248 La. 730, 181 So.2d 763 (1966).
Evidence adduced out of the presence of the jury, establishing the voluntariness of the confession and "rights waiver," satisfied the trial judge beyond a reasonable doubt that defendant Payne's confession was freely and voluntarily made. As the state points out in brief, the trial judge's findings in this respect are, while not conclusive, entitled to "great weight" by this Court upon review. State v. Stewart, supra; State v. White, 321 So.2d 491 (La. 1975); State v. Peters, 315 So.2d 678 (La. 1975). According to Peters, the "reviewing court cannot [however] avoid its responsibility to examine the record to be certain that the State has fully borne its heavy burden of proof in these cases." 315 So.2d at 681.
Despite defense counsel's statement in brief that the record reveals the failure of the interrogating officers to make a concerted effort to have defendant comprehend clearly his rights under Miranda and the fifth and sixth amendments to the United States Constitution, the trial transcript supports a contrary conclusion. In the first place, the accused had turned himself in and indicated a desire to make a confession.
Further, testimony of the state's witnesses and that of defendant Payne himself clearly shows that before questioning defendant, the interrogating officers expressly advised him of his Miranda rights, including his right to remain silent, his right to counsel, and his right to have counsel appointed for him. Defendant responded to a question by defense counsel regarding whether he understood his right to counsel, "yes, I believe I did." He then added that he did not know he could get an attorney appointed for him until the officers told him that he could (which was prior to his giving the statement).
While the officers were aware of the defendant's lack of formal education, they asked him particularly whether he understood the nature of the rights explained to him, and whether he wanted to waive them. Defendant indicated to them that he desired to waive his rights and signed the "rights of the accused waiver form." He *685 appeared in complete touch with reality and in control of himself, according to the officers. The transcript further reflects that the statement was not the product of threats, intimidation, promises, or inducements of any kind.
This Court has on occasion upset the determination of a trial judge that the state had met its burden of establishing that a defendant's confession was made voluntarily because the state failed to rebut detailed evidence presented by the defendant that the confession was not made voluntarily. State v. Peters, supra; State v. Monroe, 305 So.2d 902 (La.1974); State v. Simien, 248 La. 323, 178 So.2d 266 (1965); State v. Honeycutt, 216 La. 610, 44 So.2d 313 (1950); State v. Robinson, 215 La. 974, 41 So.2d 848 (1949); State v. Scarbrough, 167 La. 484, 119 So. 523 (1928).
In this case, however, defendant Payne put forth no evidence which the state was required to rebut. In fact, Payne's testimony was that he desired to waive his rights, and that there had been no threats, duress, or promises made to him.
Defendant, however, argues that defendant's mental condition foreclosed a valid waiver despite the evidence on the record to the contrary. In his brief, counsel for the defendant relies on testimony by Dr. Chester A. Williams, Jr.,
(1) that four years prior to the charged crime, defendant was committed to East Louisiana State Hospital in Jackson, Louisiana suffering with a mental defect;
(2) that the accused was mentally retarded and that, while the defendant appeared "relatively normal mentally" at trial, this was because he was "on medication";
(3) That in the doctor's expert opinion, at the time of the commission of the offense
(a) He could distinguish between right and wrong, but it wouldn't "make any difference to him where an essentially normal person, it would have an influence on him;" and
(b) he was not "completely disassociated from reality at that time, but I think under the extreme stress that he did not react in a normal manner."
Defendant contends that this testimony establishes that at the time the confession and rights waiver were obtained the accused was incapable of making a knowing and intelligent waiver of his constitutional rights.
If a person is insane and thereby precluded from waiving his rights voluntarily and intelligently, his confession cannot be considered voluntary, and it cannot be admitted into evidence against him. Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); see Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
In this case, however, the trial judge found the state's evidence of defendant's sanity and comprehension sufficient to establish beyond a reasonable doubt that defendant had the capacity and comprehension to voluntarily and knowingly waive his rights, a decision with which we do not disagree. Furthermore, defendant's evidence, medical and lay, was directed towards defendant's mental capacity not at the time defendant turned himself in and confessed, some hours after the incident, but rather at the time of commission of the murder. While separated in time by less than a day, the two incidents obviously presented different stress situations for defendant.
We do not choose to rely upon any procedural deficiency but we deem it worth noting that the trial court's ruling to allow the statement came following evidence on the predicate, which included testimony only of the state's witnesses and defendant. Dr. Williams was not presented to testify until the defendant put on his case. The trial court's ruling, however, was correct, whether prior to his ruling the judge had been afforded the opportunity to consider Dr. Williams' testimony or not.
Discounting the insanity argument because it was not established that defendant *686 was insane at the time the statement was given, the question presented for our consideration is simply whether mental retardation (the degree of which in this case not being shown) and low intelligence quotient (also not precisely established) are alone sufficient to vitiate the ability of a defendant to knowingly, intelligently and voluntarily waive constitutional rights. We have previously answered this question in the negative. State v. Nicholas, 319 So.2d 361 (La.1975); State v. Edwards, 257 La. 707, 243 So.2d 806 (1971).
We find, therefore, that the statement made by defendant Payne to police officers was admissible at his trial because the state did establish that it was made voluntarily after Payne had knowingly and intelligently waived his rights.
In assignment of error number four defendant contends that the waiver of rights form which he signed is patently unconstitutional inasmuch as it is a form which the defendant had no part in formulating or drafting. Defendant contends that such participation on his part is essential to safeguard his rights under Miranda. The assignment has no merit. No language in Miranda v. Arizona, supra, nor any other decision of the United States Supreme Court or this Court suggests any such requirement.
For the foregoing reasons defendant's conviction is affirmed.